## STATE OF CONNECTICUT *v.* THOMAS HUGHES
## (AC 14572)

Dupont, C. J., and Heiman and Freedman, Js.

Argued January 17—officially released May 27, 1997

*Robert Sullivan,* for the appellant (defendant).

*Richard F. Jacobson,* senior assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen Sedensky,* assistant state's attorney, for the appellee (state).

*Opinion*

HEIMAN, J. The defendant, Thomas Hughes, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[1] The defendant was found not guilty of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (2)[2] and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (B).[3] On appeal, the defendant claims that the trial court improperly (1) found the victim competent to serve as a witness, (2) admitted a witness'

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . . "

[2] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (2) such other person is mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual intercourse . . . ."

[3] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is . . . (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact . . . . "

prior consistent statement under the *Dolphin*[4] doctrine, (3) denied his motion to sever count one from counts two and three, (4) allowed his silence and demeanor to be used against him in violation of *Doyle*,[5] and (5) permitted the prosecution to withhold exculpatory information from the defendant in violation of *Brady*.[6] We reverse the judgment of the trial court.[7]

The jury could reasonably have found the following facts. The victim, a twenty year old man with pervasive developmental disorder, took guitar lessons from the defendant. In November, 1991, during a guitar lesson, the defendant threatened the victim with a kitchen knife and forced him to perform fellatio on the defendant. The defendant and the victim maintained a sexual relationship for the next year. In November, 1992, the victim told his mother about his sexual relationship with the defendant, explaining that it began with the November, 1991 knife incident. The victim's mother became angry, ended the guitar lessons and contacted the police.

The defendant was charged with three counts of sexual assault. In June, 1994, the defendant was tried before a jury. He was convicted of one count of sexual assault in the first degree and was acquitted of one count of sexual assault in the second degree and one count of sexual assault in the fourth degree. On September 30, 1994, the defendant was sentenced to serve a term of ten years, suspended after five years, with five years probation. This appeal follows.

The defendant claims that the trial court improperly admitted evidence of his post-*Miranda* silence and allowed it to be used against him, in violation of *Doyle*

---

[1] *State* v. *Dolphin*, 178 Conn. 564, 424 A.2d 266 (1979).

[5] *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

[6] *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[7] In view of our disposition of the *Doyle* issue, it is unnecessary to review the other claims.

v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). We agree.

Certain additional facts are necessary to an understanding of our resolution of this claim. On January 13, 1993, at the Westport police station, Detectives Anthony Giunta and Bruce Peterson interviewed the defendant. First, the detectives read the defendant a standard advisement of rights form. The defendant initialed each right, acknowledging that he had been advised of and fully understood each right. Two of the enumerated rights were the right to remain silent and the right to refuse to answer questions or to stop answering questions at any time.

Next, the detectives asked the defendant general background questions about where he lived and worked. Then, the detectives told the defendant about the victim's complaint and his accusations against the defendant. The defendant "wrenched"[8] his face, dropped his face into his hands and said that he did not want to talk about it, that he did not think it would be in his best interest to talk about the accusations. The defendant became silent. Soon thereafter, the detectives asked the defendant to leave. In response to a motion to suppress, the trial court held an extensive pretrial hearing and found that the defendant was not in custody while being questioned.

At trial, Giunta testified no less than eight different times as to the defendant's request not to talk about the accusations, and his subsequent silence. At one point, Giunta testified that, upon hearing the victim's knife allegation, the defendant said he did not want to talk about it, wrenched his face and brought his hands up to his face. The state's attorney asked, "What did

[8] At trial, the detectives testified that upon hearing the accusations against him, the defendant "wrenched" his face.

you observe that to be?" Giunta responded, "I took that as a form of guilt."

Later, Giunta again testified that, upon hearing the accusations against him, the defendant wrenched his face, dropped his face into his hands, stated that he did not want to talk about the accusations and became silent. The state's attorney then asked Giunta twice, "He didn't come out and say that's not true?" Giunta replied that the defendant never denied the accusations, and, when pressed, the defendant stated that it would not be in his best interest to discuss the accusations.[9] During closing argument, the state's attorney again equated the defendant's post-*Miranda* silence with guilt and consciousness of guilt.[10]

"In *Doyle* v. *Ohio*, supra, 426 U.S. 619, the United States Supreme Court held that 'evidence of a defend-

---

[9] Giunta testified that he related the nature of the victim's complaint to the defendant. The state's attorney then asked, "Did he say that wasn't true?" Giunta responded, "No he didn't deny anything." The state's attorney asked, "What did he say about it?" Giunta explained that the defendant "didn't want to talk about it. He didn't think it was going to be in his best interest." At which point, the state's attorney clapped his hands together and yelled, "He didn't come out and say that's not true?" The defense attorney then objected, arguing that this last question was "totally inappropriate." The state's attorney offered to rephrase the question. The state's attorney then asked Giunta, "What did [the defendant] do when you told him what [the victim] had said he had done with the knife?" Giunta responded, "He put his hands on his face like this and wrenched his face. Then he dropped his hands. Then he was quiet and he never, never gave a denial about what [the victim] had said and he—when pressed, he just said that he did not think that answering it would be in his better interest." The state's attorney asked, "That was the extent of his comment about that?" Giunta answered, "Yeah. Yes it was."

[10] During his closing argument, the state's attorney said, "[F]inally, [Giunta] says . . . this is what [the victim] is saying about you. Hey, I don't know what the kid is talking about—you know—but it's not in my best interest to answer that question. . . . Well, you're darn right if you're doing that and holding a knife to [the victim], it certainly isn't in your best interest and you can point the finger at Detective Giunta but he's not the one who held the knife on [the victim]. He's not the one that was having sex with [the victim]. He was the officer that went out and did a good job and talked to everybody that was involved."

ant's . . . post-*Miranda* silence is constitutionally impermissible under the due process clause of the fourteenth amendment.' " *State* v. *Ricketts*, 37 Conn. App. 749, 758–59, 659 A.2d 188, cert. denied, 234 Conn. 913, 660 A.2d 355, cert. denied, 516 U.S. 977, 116 S. Ct. 481, 133 L. Ed. 2d 409 (1995). "The court based its holding on two considerations: First, it noted that silence in the wake of *Miranda* warnings is 'insolubly ambiguous' and consequently of little probative value. Second and more important, it observed that 'while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.' " *State* v. *Plourde*, 208 Conn. 455, 465–66, 545 A.2d 1071, cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1988).

"With respect to post-*Miranda* warnings silence . . . silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." (Internal quotation marks omitted.) *State* v. *Daugaard*, 231 Conn. 195, 219–20, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). "Such evidence [of the defendant's post-*Miranda* silence] may not be used to . . . imply guilt or to indicate a consciousness of guilt . . . ." (Citations omitted.) *State* v. *Ricketts*, supra, 37 Conn. App. 759–60.

"The unfairness of using a defendant's silence following *Miranda* warnings is not mitigated by the absence of custody. *Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. . . . *Doyle* bars the use against a criminal defendant of silence

maintained after receipt of governmental assurances. . . . Custody is therefore not a prerequisite to a *Doyle* violation." (Citations omitted; internal quotation marks omitted.) *State* v. *Plourde*, supra, 208 Conn. 467.

Here, the defendant was clearly given his *Miranda* rights. The state argues, however, that the defendant's speaking with the police casually after he was read his *Miranda* rights, but before the police informed him of the complaint against him, constituted a waiver of his right to remain silent, or an example of impermissible "selective silence." We disagree.

"While a defendant may invoke his right to remain silent at any time, even after he initially waived his right to remain silent, it does not necessarily follow that he may remain selectively silent. . . . [T]here must be some indication that the defendant has invoked the right to remain silent." (Citations omitted; internal quotation marks omitted.) *State* v. *Taft*, 25 Conn. App. 149, 152–53, 593 A.2d 973, cert. denied, 220 Conn. 918, 597 A.2d 343 (1991).

Here, the defendant spoke casually with the detectives after he was read his *Miranda* rights. As soon as he was informed of the complaints made against him, however, the defendant clearly invoked his right to remain silent and refused to speak to the detectives about the alleged crimes. Thus, we conclude that the defendant neither waived his right to remain silent, nor was selectively silent. Cf. *State* v. *Casey*, 201 Conn. 174, 185–86, 513 A.2d 1183 (1986); *State* v. *Talton*, 197 Conn. 280, 295, 497 A.2d 35 (1985); *State* v. *Taft*, supra, 25 Conn. App. 152–53.

We conclude, therefore, that the detective's testimony at trial, in conjunction with the state's attorney's closing argument, improperly used evidence of the defendant's post-*Miranda* silence to imply the defendant's guilt and consciousness of guilt, and thus were

" 'fundamentally unfair and a deprivation of due process
. . . .' " *State* v. *Plourde*, supra, 208 Conn. 468, quoting
*Doyle* v. *Ohio*, supra, 426 U.S. 618.

Having concluded that the trial court's admission of
evidence of the defendant's post-*Miranda* silence was
improper, we next consider whether it was harmful.
"When an error is of constitutional dimension, the state
has the burden of proving it harmless beyond a reason-
able doubt." *State* v. *Plourde*, supra, 208 Conn. 468.

"The cases wherein the error has been found to be
prejudicial disclose repetitive references to the defend-
ant's silence, reemphasis of the fact on closing argu-
ment, and extensive, strongly-worded argument
suggesting a connection between the defendant's
silence and his guilt." (Internal quotation marks omit-
ted.) *State* v. *Daugaard*, supra, 231 Conn. 213. Here,
evidence of the defendant's post-*Miranda* silence was
brought up repeatedly during the examination of Giunta
and was then referred to during closing argument. The
defendant's post-*Miranda* silence was consistently
equated with his guilt. Moreover, as the defendant did
not testify at trial, there was a "reasonable possibility"
that the repeated use of evidence of the defendant's
post-*Miranda* silence as affirmative proof of his guilt
and consciousness of guilt contributed to his convic-
tion. See *State* v. *Plourde*, supra, 208 Conn. 469. We
conclude, therefore, that the trial court's improper
admission of the evidence of the defendant's post-
*Miranda* silence was not harmless beyond a reasonable
doubt and thus a new trial is necessary.

The judgment is reversed and the case is remanded
for a new trial.

In this opinion the other judges concurred.