STATE OF CONNECTICUT *v.* JUSTIN C. PEPPER
(SC 17075)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued October 18—officially released December 7, 2004

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Lawrence J. Tytla*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Justin C. Pepper, was convicted on charges of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[1] On the defendant's appeal to the Appellate Court, that court affirmed the judgment of conviction. *State* v. *Pepper*, 79 Conn. App. 1, 828 A.2d 1268 (2003). We granted the defendant's petition for certification to appeal limited to the following question: "Did the Appellate Court properly conclude that the defendant's rights of confrontation and to present a defense were not infringed when the trial court restricted the defendant from inquiring about the victim's motive?" *State* v. *Pepper*, 266 Conn. 919, 837 A.2d 801 (2003). We affirm the judgment of the Appellate Court.

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

The opinion of the Appellate Court sets forth the following facts. "On April 23, 2001, at 11:30 p.m., the victim was in her residence with her husband and her one year old daughter, who were asleep, when the defendant knocked on her door uninvited. The defendant appeared upset and wanted to speak with the victim's husband. The victim woke her husband so that he could get ready for work, which began at midnight. Her husband left for work at 11:45 p.m., but the defendant remained. The defendant and the victim conversed about what was upsetting the defendant. During their conversation, both drank alcoholic beverages. The victim then began to drink soda.

"At 12:30 a.m., the victim's husband called her and asked if the defendant was still there. The victim answered in the affirmative. The victim and the defendant then began to 'play fight' with each other, which involved the victim spitting soda and water on the defendant, the defendant attempting to retaliate, and both running around the residence as they did so. The victim's husband called a second time and asked if the defendant was still there. The victim lied and stated that he had left. She then noticed that the floor near the bathroom was sticky from spilled soda and proceeded to mop up the spill. She then went into the bathroom and changed into her pajamas, which consisted of baggy cargo pants, a blue tank top, and no underwear.

"The defendant said that he and the victim should have sex and that he would not tell her husband. The victim told the defendant no, that she was married and would not have sex with him. She then asked the defendant to leave her residence. The defendant told her that he would not leave until he 'got some' and came toward the victim. She ran toward her bedroom where she planned to lock herself in to prevent the defendant's advances, but on her way she slipped on the floor that

she had just cleaned. The defendant grabbed her as she fell and pushed her into the bedroom. He then threw her onto the bed and jumped on top of her between her legs. The victim tried to push the defendant away with her feet and kicked the defendant. The defendant continued in his attempt to spread her legs apart as the victim struggled and screamed for the defendant not to continue. The defendant told her to shut up or he would punch her in the face.

"The defendant then pulled her pants down, removed his shirt and pushed his pants down to his ankles, leaving his sneakers on. He then placed the victim's legs over his shoulders and had sexual intercourse with her for five minutes, during which he told her to be quiet or he would punch her in the face. The victim said it was impossible to fight the defendant in the position she was in. After the intercourse, the defendant threatened that if she told anyone, he would inform her husband that the sex was consensual and that she had slept with an old roommate. The victim was distraught and upset after the sexual assault.

"Once the defendant left, the victim contacted her father, the police and her husband informing them of the sexual assault. She was taken to a hospital where routine tests after a sexual assault were given and evidence taken. Her injuries included abdominal pain, back pain, bruising on her inner thighs and vaginal bleeding. Laboratory tests from specimens taken from the victim and compared with a blood sample from the defendant indicated that his sperm was present." *State* v. *Pepper*, supra, 79 Conn. App. 3–5.

The defendant claimed on appeal to the Appellate Court that the trial court improperly precluded him from cross-examining the victim concerning the reasons for a previous suicide attempt that had occurred after she had engaged in an earlier extramarital affair.

14

Id., 5. He argued that this evidence was relevant to the victim's motive for lying about the events on the night in question. Id., 7. The Appellate Court rejected this claim. Id., 12. This certified appeal followed.

After examining the record on appeal and fully considering the briefs and arguments of the parties, we conclude that the judgment of the Appellate Court should be affirmed. The thoughtful and comprehensive opinion of the Appellate Court properly resolved the issue in this certified appeal. Further discussion by this court would serve no useful purpose. See, e.g., *State* v. *Butler*, 255 Conn. 828, 830, 769 A.2d 697 (2001).

The judgment of the Appellate Court is affirmed.