STATE OF CONNECTICUT *v.* JASMINE F. BEREIS
(AC 29763)

DiPentima, Lavine and West, Js.

Argued May 18—officially released September 29, 2009

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Melissa Patterson*, deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Christa L. Baker*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Jasmine F. Bereis, appeals from the judgment of conviction, rendered following a jury trial, of operating a motor vehicle while

under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a.[1] On appeal, the defendant argues that (1) the evidence was insufficient to support her conviction and (2) the trial court improperly admitted into evidence two police reports. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 15, 2005, Don Patterson was working at the Stonington Institute, located on Swantown Hill Road, near Route 2 in North Stonington. At approximately 3:45 p.m., he observed a blue sport utility vehicle travel through the parking lot and collide with a parked vehicle. Patterson was standing approximately fifteen feet from the parking lot and had an unobstructed view of it. He observed the driver of the vehicle stop for a moment and then drive to the far end of the parking lot. As Patterson approached the vehicle, he observed the driver and the passenger, both of whom were female, yelling at each other. After a few minutes, the vehicle left the parking lot. Patterson wrote down the vehicle's license plate number and telephoned the police to report the accident.

Robert Veach, a state police trooper, was on patrol on Route 2 in North Stonington on April 15, 2005. Between 4 and 4:30 p.m., Veach received a call to look for a specific vehicle and license plate number that had been involved in an accident in the Stonington Institute parking lot. Veach then drove eastbound on Route 2 toward the Stonington Institute. While traveling on Route 2, he noticed the vehicle described in the call. As he approached the vehicle, Veach observed two females, one in the passenger seat and one in the driver's seat. The driver, later identified as the defendant, had

---

[1] The defendant also was charged with evading responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (b). The jury returned a verdict of not guilty on that charge.

the key in the ignition and was attempting to start the vehicle, which was not running. The engine was turning over but was not catching and appeared to have been flooded. Veach instructed the defendant to stop trying to start the vehicle and reached in the vehicle to take the key. Both women were emotional, loud and causing a commotion.

The defendant and the passenger exited the vehicle. Veach spoke with the defendant and smelled alcohol on her breath. The defendant was stumbling, and her speech was slurred. She was combative, verbally abusive and was jumping up and down. She stated that she had been drinking but had consumed only a couple of drinks. Veach concluded that she was intoxicated.

The passenger, who was later identified as Jessica Bereis, the defendant's twin sister, then began moving back and forth between the side of the road and the roadway itself, walking into oncoming traffic. The defendant began breathing heavily, at which point Jessica Bereis informed Veach that the defendant was having an asthma attack. Veach called for medical assistance. He also called for additional officers because Jessica Bereis continued to run into the road, and the defendant was having breathing problems. He told both women to stay off the road, but neither followed his instructions. Veach had planned on giving the defendant field sobriety tests; however, because she was not following his instructions and appeared to be having breathing problems, he concluded that it would be unsafe to administer the tests. Shortly thereafter, C. Peasley, a state trooper,[2] arrived and was able to prevent Jessica Bereis from running into the road. When an ambulance arrived, the defendant stopped having breathing problems and refused medical attention.

---

[2] The full name of Trooper Peasley is not apparent from the record.

Although the appearance of the two women was almost identical, Veach was able to tell them apart because Jessica Bereis and the defendant were wearing different clothing. Moreover, while Jessica Bereis continued to run into the road, Veach spoke with the defendant, who appeared to be having breathing problems.

On the basis of the defendant's irrational and erratic behavior, the alcohol on her breath, her slurred speech, her difficulty walking and her statement that she had been drinking, as well as his training and experience, Veach determined that the defendant was intoxicated. Veach placed the defendant under arrest and transported her to police barracks. At the barracks, Veach advised the defendant of her *Miranda* rights[3] and the implied consent advisory regarding the intoximeter test,[4] which performs a chemical analysis of a person's breath,[5] and afforded her an opportunity to contact an attorney. The defendant refused to take the intoximeter test and refused to sign a notice of rights form indicating that she had been advised of her rights. She also refused to answer questions regarding her medical condition or medications, whether she had consumed any alcoholic beverages or taken any drugs and when she had last eaten.

I

Because the defendant would be entitled to a judgment of acquittal were she to succeed on her claim that the evidence was insufficient to support her conviction, we first address that claim. See *State* v. *Plourde*, 208 Conn. 455, 457, 545 A.2d 1071 (1988), cert. denied, 488

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Pursuant to General Statutes § 14-227b (a), "[a]ny person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . ."

[5] See *Ellam* v. *Commissioner of Motor Vehicles*, 47 Conn. App. 509, 511, 704 A.2d 257 (1998).

U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989). Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt that she was operating a motor vehicle and was under the influence of intoxicating liquor. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Winer*, 112 Conn. App. 458, 463, 963 A.2d 89, cert. denied, 292 Conn. 903, 973 A.2d 107 (2009).

Section 14-227a provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both . . . ." Thus, to sustain a conviction under § 14-227a, the state must prove three elements: (1) operation of a motor vehicle, (2) on a public highway or other designated area, (3) while under the influence of intoxicating liquor or drugs.[6] *State* v. *Walters*, 111 Conn. App. 315, 319, 959 A.2d 13 (2008), cert. denied, 290 Conn. 904, 962 A.2d 795 (2009).

---

[6] The sufficiency of evidence as to the second element is not challenged in this appeal.

A

Our case law provides that "[a] person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." *State* v. *Haight*, 279 Conn. 546, 552, 903 A.2d 217 (2006), quoting *State* v. *Swift*, 125 Conn. 399, 403, 6 A.2d 359 (1939). Here, the jury heard evidence that an individual was driving a vehicle bearing a specific license plate number that hit a car in the parking lot of the Stonington Institute and then left the scene. The jury also heard evidence that a short time later, Veach located the same vehicle parked on the side of a nearby road and that the defendant was sitting in the driver's seat with the key in the ignition. The jury therefore reasonably could infer that the defendant had driven the vehicle on a public highway from the Stonington Institute parking lot to the side of the road. See *State* v. *Gordon*, 84 Conn. App. 519, 526, 854 A.2d 74 (noting that probative force of evidence not diminished by fact that evidence is circumstantial and that "[i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence" [internal quotation marks omitted]), cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).

In addition, the jury heard evidence that the defendant had the key in the ignition and was attempting to start the vehicle. Veach testified that the engine was turning over but was not catching and appeared to have been flooded. See *State* v. *Haight*, supra, 279 Conn. 553 ("The act of inserting the key into the ignition and the act of turning the key within the ignition are preliminary to starting the vehicle's motor. Each act, in sequence with other steps, will set in motion the motive power of the vehicle. . . . Each act therefore constitutes

operation of the vehicle . . . ." [Citation omitted; internal quotation marks omitted.]); see also *State* v. *Cyr*, 291 Conn. 49, 56–61, 967 A.2d 32 (2009). Although Jessica Bereis testified that she had been driving the vehicle and that the defendant was sleeping in the passenger seat, the jury, as the fact finder, was free to reject this testimony and to credit Veach's testimony that the defendant was in the driver's seat. See *State* v. *Marcisz*, 99 Conn. App. 31, 36, 913 A.2d 436 (fact finder had right to reject defendant's testimony that other individual was driving motor vehicle), cert. denied, 281 Conn. 922, 918 A.2d 273 (2007). Thus, the jury heard sufficient evidence from which it could reasonably infer that the defendant was operating a motor vehicle.

B

This court has defined driving while under the influence of intoxicating liquor as having occurred when "a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted.) *State* v. *Gordon*, supra, 84 Conn. App. 526. In the present case, the jury heard evidence that the defendant was stumbling, combative, verbally abusive and behaving erratically. The jury also heard evidence that the defendant's speech was slurred and that her breath smelled of alcohol. In addition, the jury heard evidence that the defendant told Veach that she had been drinking. Veach testified that he determined that it would be unsafe to administer field sobriety tests because the defendant was not following his instructions and appeared to be having breathing problems, which ceased upon the arrival of medical personnel. Finally, the jury heard evidence that Veach, who had received extensive training in the observation of intoxicated motorists and has stopped hundreds of drivers

whom he suspected of driving under the influence, concluded that the defendant was intoxicated. Thus, the jury had sufficient evidence from which it could reasonably infer that the defendant was intoxicated. See *State v. Windley*, 95 Conn. App. 62, 66–67, 895 A.2d 270 (evidence sufficient to establish defendant operating motor vehicle under influence of intoxicating liquor when officer testified defendant's speech slurred, breath smelled of alcohol and defendant stated he had been drinking), cert. denied, 278 Conn. 924, 901 A.2d 1222 (2006).

Our review of the evidence, therefore, persuades us that the jury reasonably could have concluded that the cumulative force of the evidence established beyond a reasonable doubt that the defendant had been operating a motor vehicle under the influence of intoxicating liquor.

## II

The defendant also challenges the admission of two police reports: a notice of rights form and an arrest and alcohol test report, commonly known as an A-44.[7] The defendant claims that the state's use of the notice of rights form and the A-44, as well as Veach's testimony regarding the two reports, violated her federal constitutional right to remain silent following her receipt of *Miranda* warnings because the exhibits and testimony referenced her silence.[8]

---

[7] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A.2d 1279 (2001).

[8] We note that the defendant also claims that the court improperly admitted the aforementioned police reports into evidence because they were not relevant, were prejudicial and contained inadmissible hearsay. We conclude that even if the court improperly admitted the police reports on evidentiary grounds, the defendant has not met her burden of proving that the improper evidentiary ruling was harmful. See *State* v. *Thomas*, 110 Conn. App. 708, 718–19, 955 A.2d 1222 (factors in determining harmlessness include importance of evidence in prosecution's case, whether evidence cumulative, over-

At trial, Veach testified that he read the defendant her rights and afforded her an opportunity to contact an attorney. He further testified that the defendant refused to sign a notice of rights form indicating that she had been advised of her rights. The state showed Veach the notice of rights form. He testified that he had written "refused" in the space on the form for the defendant's signature. The defendant objected.

Outside of the presence of the jury, defense counsel stated that the basis of his objection was "hearsay, bolstering the witness, prejudicial . . . ." He argued that "[i]t's hearsay because [Veach] can testify to what happened, and it's bolstering what he said, essentially, going on repeating what he just testified to" and then asked why the form was relevant. The prosecutor responded: "The fact that she refused it. It bolstered the argument that she refused everything else. It goes to her state of mind at the time." The court determined that the notice of rights form was both relevant and admissible, overruled defense counsel's objection and admitted the form into evidence.

The court then addressed the A-44. Defense counsel indicated that he had similar objections to the admission of the A-44, specifically, that it included hearsay such as the notation that the defendant was stumbling and that she refused to "perform any action . . . ." The court admitted the A-44 into evidence.

In the presence of the jury, Veach continued to describe the steps he had taken when booking the defendant. Over defense counsel's objection, Veach testified that the defendant refused to take the intoximeter test and that her refusal had to be noted on the A-44 and witnessed by an additional officer. Veach testified regarding each section of the A-44 and indicated that

all strength of prosecution's case and impact of evidence on trier of fact and result of trial), cert. denied, 289 Conn. 952, 961 A.2d 418 (2008).

the box marked "RTA" next to the questions in the "Interview" section meant "refused to answer." The questions addressed the defendant's medical condition and medications, whether she had consumed any alcoholic beverages or taken any drugs and when she had last eaten.[9]

## A

We begin with the state's argument that the defendant's claim should not be reviewed. Because the defendant did not raise this claim at trial, she now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state argues, inter alia, that the record is inadequate for review, and, therefore, the defendant's unpreserved claim fails under the first prong of *Golding*. We disagree.

Under the familiar principle established in *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if each of four conditions is

[9] The "RTA" box is checked beside the heading "Section D: Interview." In addition, the "RTA" box is checked next to the following questions:
"Are you injured?
"Are you ill?
"Are you a diabetic?
"Do you take insulin?
"If yes, when was the last taken insulin?
"Do you take medication?
"If yes, what type of medication?
"When did you last take medication?
"Do you need medication now?
"If yes, which type?
"Your weight?
"When did you start drinking?
"When did you stop drinking?
"What type of alcoholic beverage did you drink?
"How much did you drink?
"Where did you drink?
"When did you last eat and what did you eat?
"Did you take drugs?
"If so, what kind and how much?"

met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 5 n.8, 966 A.2d 712 (2009). Under the first prong of *Golding*, "[t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." *State* v. *Golding*, supra, 213 Conn. 240.

The state relies on *State* v. *Brunetti*, 279 Conn. 39, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007), for its contention that the record is inadequate for review. In *Brunetti*, the defendant challenged for the first time on appeal the legality of a search of his parents' home on the ground that his mother had not consented to the search. Id., 47. Our Supreme Court, in concluding that the record was inadequate for its review of the defendant's claim, noted that "the act of declining to *sign* a consent to search form is not tantamount to a refusal to *consent* to the search, rather, it is simply one of several relevant factors that a court considers in determining the validity of a consent to search." (Emphasis in original.) Id., 56. The court then reasoned that because "the state had no reason to present any evidence regarding the mother's consent or lack thereof . . . we simply do not know

any of the other circumstances surrounding the mother's refusal to sign the consent to search form . . . [such that] any conclusion regarding the defendant's mother's position concerning the search . . . would be purely speculative." Id., 58.

Unlike *Brunetti*, in which neither the prosecutor nor the defense attorney asked the defendant's mother questions regarding her refusal to sign a consent to search form; id., 50; here, a significant portion of Veach's testimony described the sequence of events, his actions and the defendant's actions after the defendant had been taken to the police barracks. The record in the present case, therefore, is not void of the factual circumstances surrounding the defendant's claim. Although we recognize the state's point that without notice of a *Doyle*[10] claim, it did not have the opportunity to present evidence that the defendant was "selectively silent,"[11] thereby precluding a *Doyle* violation, our inquiry properly focuses on whether the record is sufficient to allow us to determine whether a violation of constitutional magnitude has occurred. See id., 55–56. Put another way, the facts revealed by the record are not "insufficient, unclear or ambiguous . . . ." *State* v. *Golding*, supra, 213 Conn. 240. We need not speculate to reach a decision as to whether a *Doyle* violation occurred and, accordingly, conclude that the record is sufficient for this inquiry.

Thus, we conclude that the record is adequate for review. The defendant has satisfied the second prong of *Golding* because a *Doyle* claim is of constitutional

---

[10] *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

[11] As we explain in part II B, a *Doyle* violation is one in which the state introduces improper evidence of a defendant's post-*Miranda* silence in violation of the defendant's right to remain silent. *Doyle* v. *Ohio*, supra, 426 U.S. 610. Our Supreme Court has held that a defendant cannot raise a *Doyle* claim when he has not invoked his right to remain silent and instead is "selectively silent." See *State* v. *Bell*, 283 Conn. 748, 767, 931 A.2d 198 (2007).

magnitude. *State* v. *Camacho*, 92 Conn. App. 271, 279, 884 A.2d 1038 (2005), cert. denied, 276 Conn. 935, 891 A.2d 1 (2006). Therefore, we will afford it review.

B

Turning to the merits of the defendant's claim, we note that because the claim raises a question of law, our standard of review is plenary. Id. "In *Doyle* . . . the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. The court based its holding [on] two considerations: First, it noted that silence in the wake of *Miranda* warnings is insolubly ambiguous and consequently of little probative value. Second and more important[ly], it observed that while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. . . . The court . . . reaffirmed *Doyle*'s reasoning in *Wainwright* v. *Greenfield*, 474 U.S. 284, 290, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986), in which it held that the defendant's silence following his arrest and receipt of *Miranda* warnings could not be used at trial to rebut his defense of insanity. The court reasoned: The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 523–24, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

Our Supreme Court has reasoned that it is also fundamentally unfair and a deprivation of due process for the

state to use evidence of the defendant's post-*Miranda* silence as affirmative proof of guilt. *State* v. *Kirby*, 280 Conn. 361, 400, 908 A.2d 506 (2006). The court has noted that post-*Miranda* silence under *Doyle* "does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted. *Wainwright* v. *Greenfield*, supra, 474 U.S. 295 n.13." (Internal quotation marks omitted.) *State* v. *Cabral*, supra, 275 Conn. 524.

The defendant argues that the admission of the A-44 constituted a *Doyle* violation. Specifically, the defendant refers to the notation on the A-44 that she refused to answer a series of questions regarding whether she was on medication, the last time she had eaten and if she had consumed any drugs or alcohol. At oral argument before this court, the state conceded that admission of the notation that the defendant refused to answer the questions regarding drugs or alcohol constituted a *Doyle* violation.[12]

In this case, Veach informed the defendant of her right to remain silent, which included the warning that anything she said could be used against her. The defendant chose to remain silent by declining to answer any of the questions listed on the A-44. See *State* v. *Smith*, 107 Conn. App. 746, 752, 946 A.2d 926 (noting there is no particular prescription for behavior or words that constitute invocation of defendant's right to remain silent), cert. denied, 288 Conn. 905, 953 A.2d 650 (2008). The defendant, therefore, was not "selectively silent." See *State* v. *Torres*, 85 Conn. App. 303, 315–16, 858 A.2d 776 ("the [*Doyle*] rule does not apply when the defendant merely pauses during an interview or alternates between remaining silent and speaking: While a defendant may invoke his right to remain silent at any

---

[12] The state's concession of error is limited to these specific questions.

time, even after he has initially waived his right to remain silent, it does not necessarily follow that he may remain 'selectively' silent" [internal quotation marks omitted]), cert. denied, 271 Conn. 947, 861 A.2d 1179 (2004).

At trial, however, the state offered evidence of the defendant's refusal to answer questions both through Veach's testimony and the admission of the A-44. Significantly, the A-44 showed that the defendant repeatedly chose to remain silent rather than answer Veach's questions, which included inquiries regarding her alcohol and drug consumption. By refusing to be interviewed, the defendant invoked her right to remain silent. Compare *State* v. *Montgomery*, 254 Conn. 694, 715, 759 A.2d 995 (2000) (defendant invoked right to remain silent when he declined to answer question and made signal indicating desire to terminate interview) with *State* v. *Kirby*, supra, 280 Conn. 401 (defendant's statement that he did not want to deal with "paperwork" neither silence nor invocation of right to remain silent). "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. . . . *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." (Internal quotation marks omitted.) *State* v. *Plourde*, supra, 208 Conn. 467. Thus, by admitting evidence of the defendant's silence, the state acted contrary to the implicit assurance that the defendant's silence would not be used against her. See id., 468. Accordingly, allowing evidence of the defendant's silence would be inconsistent with the rule that "evidence [of the defendant's post-*Miranda* silence] may not be used to . . . imply guilt or to indicate a consciousness of guilt . . . ." (Citations omitted.) *State* v. *Ricketts*, 37 Conn. App. 749, 759–60, 659 A.2d 188, cert. denied, 234 Conn.

913, 660 A.2d 355, cert. denied, 516 U.S. 977, 116 S. Ct. 481, 133 L. Ed. 2d 409 (1995).

The state argues that other than the A-44 questions regarding drugs and alcohol, Veach's testimony and the admission of the A-44 fall outside the scope of *Doyle* because the evidence established the sequence of events and Veach's investigative efforts. We do not agree.

Our Supreme Court has recognized that "[r]eferences to one's invocation of the right to remain silent [are] not always constitutionally impermissible . . . [and are allowed] in certain *limited and exceptional circumstances*." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Alston*, 272 Conn. 432, 441, 862 A.2d 817 (2005). Specifically, the state is permitted "some leeway in adducing evidence of the defendant's assertion of that right for purposes of demonstrating the investigative effort made by the police and the sequence of events as they unfolded . . . as long as the evidence is not offered to impeach the testimony of the defendant in any way." (Internal quotation marks omitted.) *State* v. *Kirby*, supra, 280 Conn. 401. The present case does not present the limited and exceptional circumstances in which a reference to the defendant's silence is permissible. Here, the state presented evidence that the defendant refused to be interviewed and refused to answer all of Veach's questions. Significantly, the A-44, which reflected the defendant's refusal to answer each individual question, was admitted into evidence. Compare *State* v. *Alston*, supra, 441–42 (testimony that "[defendant] terminated the interview" proper because it merely described investigative efforts of police) and *State* v. *Gonzalez-Rivera*, 48 Conn. App. 784, 803, 713 A.2d 847 (brief testimony by two witnesses that defendant terminated interview not in violation of *Doyle* because testimony established sequence of events), cert. denied, 245 Conn. 923, 717

A.2d 238 (1998). Our review of the record supports the conclusion that Veach's testimony and the state's proffer of the A-44 constituted more than a brief reference to the defendant's silence to establish the sequence of events or Veach's investigative efforts.[13] Therefore, we conclude that the A-44 was admitted in violation of *Doyle.*

C

The state also argues that any *Doyle* violation was harmless beyond a reasonable doubt. We agree.

"*Doyle* violations are . . . subject to harmless error analysis. . . . The harmless error doctrine is rooted in the fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . Therefore, whether an error is harmful depends on its impact on the trier of fact and the result of the case. . . . [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. . . . The state bears the burden of demonstrating that the constitutional error was harmless beyond a reasonable doubt. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]. . . .

"A *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon a defendant's silence following a *Miranda* warning. Under such circumstances, the state's use of a defendant's [post-*Miranda*] silence does not constitute reversible error. . . . The [error] has similarly been [found to be harmless] where a prosecutor does not

---

[13] We note that the defendant does not challenge the admission of evidence of her refusal to take the intoximeter test. See General Statutes § 14-227b (b).

focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the jugular of the defendant's story. . . . The cases wherein the error has been found to be prejudicial disclose repetitive references to the defendant's silence, reemphasis of the fact on closing argument, and extensive, strongly-worded argument suggesting a connection between the defendant's silence and his guilt." (Internal quotation marks omitted.) *State* v. *Montgomery*, supra, 254 Conn. 717–18.

Here, the improper testimony regarding the defendant's silence did not strike at the jugular of the defense, which was that the defendant's sister had been driving. In addition, the reference to the defendant's refusal to answer questions was limited to Veach's testimony and was not revisited on cross-examination, redirect or during closing argument. Moreover, neither Veach nor the state made any correlation between the defendant's refusal to answer questions and her guilt. Compare *State* v. *Kuranko*, 71 Conn. App. 703, 712–13, 803 A.2d 383 (2002) (*Doyle* violation harmless when defendant's silence not focus of prosecution's cross-examination or closing argument, reference was minor portion of cross-examination and defendant's silence not highlighted) with *State* v. *Hughes*, 45 Conn. App. 289, 292–93, 296, 696 A.2d 347 (1997) (*Doyle* violation harmful where detective testified as to defendant's request not to discuss accusations and silence thereafter eight times, gave vivid description of defendant's emotional reaction to accusations, interpreted defendant's silence as evidence of guilt and state offered same inference during closing argument).

Furthermore, the case against the defendant was strong. The state introduced evidence that the driver of a vehicle bearing a specific license plate number drove into a parked car in the parking lot of the Stonington Institute. The state also introduced evidence that fifteen to thirty minutes later, Veach observed that same

vehicle parked on the side of the road with the defendant in the driver's seat, attempting to start the vehicle. Significantly, Veach testified that the defendant's speech was slurred, her breath smelled of alcohol and she "said she did have a couple of drinks." Veach also testified that he was unable to perform field sobriety tests because of the defendant's "obnoxious" and "irrational" behavior, as well as the fact that the defendant appeared to be having breathing problems, which ceased as soon as medical personal arrived. In addition, Peasley testified that the defendant's breath smelled of alcohol and that she was combative and verbally abusive. See *State* v. *Montgomery*, supra, 254 Conn. 718–21 (*Doyle* violation harmless beyond reasonable doubt when prosecutor did not repeatedly reference defendant's silence but emphasized strong case against defendant, including eyewitness identification of defendant, evidence regarding defendant's purchase of weapon used and defendant's incriminating statements); *State* v. *Pepper*, 79 Conn. App. 1, 16–17, 828 A.2d 1268 (2003) (any potential *Doyle* violation harmless when prosecution's evidence included physical evidence tying defendant to victim, defendant's untruthful statement to police and victim's physical injuries), aff'd, 272 Conn. 10, 860 A.2d 1221 (2004).

In view of the substantial evidence of the defendant's guilt and in light of the fact that the reference to the defendant's silence did not strike at the jugular of the defendant's version of events and was not equated with the defendant's guilt, we conclude that the *Doyle* violation in this case was harmless beyond a reasonable doubt.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] The defendant also claims that Veach's testimony regarding her refusal to sign the notice of rights form as well as the admission of the form itself constituted a *Doyle* violation. We conclude that in the event the references to the notice of rights form were improper, this impropriety was harmless

beyond a reasonable doubt. Veach's testimony that the defendant refused to sign the notice of rights form was brief, and, although the notice of rights form was admitted into evidence, the defendant's refusal to sign the form merely suggested that the defendant was uncooperative. Furthermore, the defendant's challenge to the notice of rights form on the ground of relevance is unfounded in light of General Statutes § 14-227b (b).