CHRISTINA PAYLAN *v.* ST. MARY'S
HOSPITAL CORPORATION
(AC 29811)

Bishop, Lavine and Peters, Js.

Argued September 9—officially released December 1, 2009

*John R. Williams*, with whom, on the brief, was *John O. Kim*, for the appellant (plaintiff).

*Lisa A. Zaccardelli*, with whom, on the brief, was *David M. Sheridan*, for the appellee (defendant).

*Opinion*

PETERS, J. In this employment discrimination case, the principal issue is the admissibility of evidence proffered in support of the principle that "the trier of fact may draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it." *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 775, 675 A.2d 829 (1996). One of the conditions that *Beers* requires a litigant to satisfy to invoke this principle is that the alleged spoliator was "on notice that the evidence should be preserved." Id., 778. In this appeal, the plaintiff argues that, pursuant to *Beers*, she is entitled to a new trial because the trial court improperly precluded her from informing the jury of the existence of a court order to preserve a computer hard drive allegedly containing evidence of the defendant's discriminatory conduct. Because of the plaintiff's failure to introduce evidence of another *Beers* condition, namely, that the defendant intentionally destroyed the allegedly inculpatory computer hard drive, we hold that the court's ruling was harmless error and affirm its judgment in favor of the defendant.

On July 18, 2003, the plaintiff, Christina Paylan, filed a complaint against her former employer, the defendant, St. Mary's Hospital Corporation, alleging, in addition to other counts,[1] discrimination on the basis of gender in violation of General Statutes § 46a-60 (a) (1)[2] and

[1] The complaint also alleged breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel and defamation, but those counts are not before us in this appeal. Although, in an amendment to the complaint filed on May 2, 2007, the plaintiff added a count of intentional spoliation of evidence, the merits of that claim have been resolved by the granting of summary judgment in favor of the defendant. The plaintiff has not appealed from that ruling.

[2] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against

retaliation in violation of § 46a-60 (a) (4).[3] The jury found in favor of the defendant on both claims. The plaintiff has appealed from the judgment of the court accepting the jury verdict.

The plaintiff maintains that she is entitled to a new trial because two allegedly improper evidentiary rulings by the court, *Scholl, J.,* impaired her ability to prove her claim of gender discrimination. She contests the validity of the court's ruling precluding her from offering evidence of (1) a court order for the preservation of a computer allegedly containing an evaluation of her performance and (2) critical evaluations of other members of the defendant's surgical staff who were retained in their employment while she was not. We are not persuaded that the plaintiff has established either of her claims to a new trial.

The following facts are undisputed. In February, 2003, the defendant, a teaching hospital with a five year long surgical residency program, hired the plaintiff to complete her fourth year of surgical residency. The employment contract stipulated that her employment would extend through June 30, 2003. In May, 2003, before the expiration of that term of employment, the plaintiff complained to a supervisory resident that she was being treated unfairly because of her gender. On June 11, 2003, Stanley J. Dudrick, a physician and head of the surgical residency program, notified the plaintiff by letter that, due to deficiencies in her performance, her contract would not be renewed for the following year.

---

such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . ."

[3] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person opposed any discriminatory employment practice . . . ."

## I

In support of the plaintiff's complaint of employment discrimination and retaliation, she sought evidence to support her contention that the defendant altered the date of a negative evaluation of her performance. Although the document appeared to be dated March 29, 2003, the plaintiff suspected that it had in fact been created in late May, after she had voiced her complaint of gender discrimination.[4] Accordingly, on June 20, 2005, she sought and obtained from the court, *Devlin, J.*, an order requiring the defendant to preserve any computer hard drives containing evidence of a negative evaluation of her performance. Thereafter, on October 25, 2005, the court, *Lager, J.*, ordered the defendant to provide the plaintiff with a copy of the metadata[5] of this document. After examination of the metadata failed to reveal the date when the original document had in fact been created, the plaintiff sought access to the hard drive itself. On February 28, 2007, however, in a request for a supplemental order, the defendant informed the court that the hard drive in question had been reformatted after a crash of the hard drive. Subsequently, on April 10, 2007, the defendant, in its objection to the plaintiff's motion for an order and sanctions, disclosed that the hard drive had been destroyed.

Relying on *Beers* v. *Bayliner*, supra, 236 Conn. 775, the plaintiff sought to inform the jury of the existence of Judge Devlin's preservation order so that she would

[4] The plaintiff testified that although the date appearing next to her signature was April 1, 2003, she had actually signed the document much later, on or about May 23, 2003, and had backdated her signature at the request of the defendant's agent, Joan A. Reeser.

[5] David Gitkos, the plaintiff's expert witness, defined metadata as "data about data, but to put it in lay terms, it's basically information contained, in this case, specifically within a . . . document such as the created date of the document, the last author, the last person who saved it, the last time it was printed, total editing time, word count, line count. That's all in the document itself, but it's not on the printed screen."

be entitled to a jury instruction permitting the jury to draw an adverse inference from the defendant's destruction of the hard drive of the computer. The party seeking such an adverse inference under *Beers* must prove that (1) the spoliation was intentional, (2) the spoliated evidence is "relevant to the issue or matter for which the party seeks the inference," and (3) "the party who seeks the inference . . . acted with due diligence with respect to the spoliated evidence. For example, the spoliator must be on notice that the evidence should be preserved." Id., 778. On November 14, 2007, the court ruled, however, that the plaintiff would not be allowed to present evidence to the jury about Judge Devlin's preservation order because, in the absence of a judicial determination that the order had been violated, such information would be unduly prejudicial to the defendant. In the same order, the court expressly allowed the plaintiff to present evidence concerning the destruction of the hard drive and deferred ruling on whether to instruct the jury that it could draw an adverse inference until after the evidence had been presented.

Our standard for review of the plaintiff's claim is well established. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . .

Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely affected] the result. . . . Despite this deferential standard, the trial court's discretion is not absolute. Provided the [litigant] demonstrates that substantial prejudice or injustice resulted, evidentiary rulings will be overturned on appeal [when] the record reveals that the trial court could not reasonably conclude as it did." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 128, 956 A.2d 1145 (2008).

We agree with the plaintiff that, in light of the importance of the hard drive to her ability to prove the circumstances of the nonrenewal of her employment contract, the court should have permitted her to inform the jury of the existence of a court order for its preservation. Without showing the existence of the court order, the plaintiff could not have established her entitlement to an adverse inference that is based on the unavailable evidence under the third prong of *Beers*. That conclusion does not, however, end the matter.

To succeed in her *Beers* claim, the plaintiff also would have had to establish the first requirement for a spoliation inference, namely, that "the evidence had been disposed of intentionally and not merely destroyed inadvertently." *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 777. Notwithstanding the court's pretrial order permitting testimony regarding the crash of the defendant's computer, the plaintiff failed to make any attempt in her direct testimony to show that the hard drive had been destroyed, let alone that it had been destroyed intentionally. The record establishes that the court did *not* preclude the plaintiff from presenting evidence concerning the defendant's destruction of the hard drive, either in the pretrial order, explicitly allowing such evidence, or in any subsequent ruling at trial. Although the plaintiff cites an arguably ambiguous ruling with

respect to some of her own testimony,[6] she herself acknowledged at trial that there was no order "that we can't talk about the fact that the computer got destroyed."[7] We note that the ruling to which the plaintiff refers came about on cross-examination, and there is nothing in the record to suggest that the offered testimony related to the hard drive. If the plaintiff had sought to offer such evidence, she could have done so on direct examination. The fact is that the plaintiff presented no such evidence.[8]

In the absence of evidence that the defendant intentionally destroyed the computer hard drive that she sought to examine, the plaintiff has not established her right to ask the jury to draw a *Beers* spoliation inference. The court's order precluding her from informing the

---

[6] The plaintiff points out that when she referred in her testimony to "destruction of evidence," the court ruled that she would not be allowed to make such references. The plaintiff was asked on cross-examination whether she thought "a competent surgeon must act with high ethical standards." She responded, in part, by stating: "I would hope that we operate in the highest ethical manner and not destroy evidence." After a subsequent recess, the defendant's counsel asked the court to instruct the plaintiff not to refer to destruction of evidence in her testimony. The court agreed, and the plaintiff herself responded: "I read the order. Your order specifically said that there should be no reference to a preservation order *not that we can't talk about the fact that the computer got destroyed.*" (Emphasis added.) The court, clarifying its ruling, stated: "I don't know that was an answer to a question that was posed. *If the issue tends to come up at some point, that's a different issue.* But that wasn't even . . . a response to the question." (Emphasis added.) The plaintiff disagreed that she had been unresponsive, but the court concluded that "[i]t [was] a gratuitous comment."

[7] Indeed, at oral argument before this court, the plaintiff initially acknowledged that she was not precluded from offering testimony concerning the destruction of the hard drive, though she renewed her argument on rebuttal that the ambiguous ruling at trial had effectively precluded her from doing so.

[8] The plaintiff's effort to fill this gap at oral argument in this court is unpersuasive. Like contentions first presented in a reply brief; *State* v. *Johnson*, 289 Conn. 437, 462 n.27, 958 A.2d 713 (2008); such arguments come too late. Further, she has provided no support for the proposition that the defendant's exclusive control over its computer shifted to the defendant the burden for explaining its nonproduction at trial.

jury of the existence of a preservation order for the computer was therefore harmless error.

## II

The plaintiff's second claim challenges an order of the court precluding her from presenting evidence to the jury in support of her claim of disparate treatment by the defendant. To succeed in her discrimination claim under § 46a-60 (a) (1), the plaintiff had to prove that her employer took adverse action against her on the basis of her gender. In support of such a claim, a litigant may present circumstantial evidence from which an inference may be drawn that similarly situated individuals were treated more favorably than she was. *Craine* v. *Trinity College*, 259 Conn. 625, 639, 791 A.2d 518 (2002). Accordingly, the plaintiff argued at trial that the termination of her employment was inconsistent with the decisions made by the defendant about the retention of male surgical residents. She maintains that the court improperly prevented her from introducing evidence concerning the performance[9] of male residents who were promoted to the next year in the residency program when she was not so promoted.

The evidence at trial in support of the plaintiff's claim of discrimination was mixed at best. The plaintiff acknowledged, in her testimony, that residents at different levels in the residency program have different responsibilities. That testimony was corroborated by the former chief resident, Shawn Tittle. In addition, as far as the record shows, only the plaintiff had been

[9] Specifically, the plaintiff offered the American Board of Surgery In Training Examination scores of the other residents. Although the plaintiff's appellate brief also refers to narrative evaluations of the other residents that were the subject of a motion in limine filed by the defendant on which the court deferred ruling, the plaintiff did not attempt to offer those evaluations at trial.

criticized for being untrustworthy, dishonest or deceitful and charged with neglect of her patient care responsibilities by leaving the hospital to go to the YMCA.

Ruling that comparisons between the plaintiff and individuals in other years of the residency program were not relevant because those individuals were not "similarly situated" to the plaintiff, the court permitted the plaintiff only to present evidence comparing herself to the one other fourth year resident in the program with her in 2003. In this appeal, the plaintiff challenges the validity of this ruling.

The parties disagree on the standard of review. The plaintiff argues that the court, may not, as a matter of law, exclude evidence of similarly situated employees because whether individuals are similarly situated presents a question of fact for the jury. The defendant argues that the court made an evidentiary ruling subject to an abuse of discretion standard of review. To resolve fully the plaintiff's claim, we must first determine whether, as a matter of law, the court had the authority to exclude evidence about potentially similarly situated individuals from consideration by the jury. Because we determine that the court did have that authority, we must also determine whether, in this case, the court abused its discretion in excluding the evidence of surgical residents in other program years.

A

The plaintiff first argues that, as a matter of law, the court improperly precluded the jury from determining whether, in her employment situation, she was similarly situated to the residents in different years of surgical training. As a question of law, the plaintiff's claim is entitled to plenary review by this court. See *State* v. *Bereis*, 117 Conn. App. 360, 373, 978 A.2d 1122 (2009).

In support of her claim that the jury should determine whether all other surgical residents were similarly situated, the plaintiff relies on federal case law holding that "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 39 (2d Cir. 2000). As the United States Court of Appeals for the Second Circuit has noted, a court "*can* properly grant summary judgment [on a discrimination claim] where it is clear that no reasonable jury could find the similarly situated prong met." (Emphasis added.) *Harlen Associates* v. *Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001). It follows that our anti-discrimination statutes, which are modeled on federal law; *Lyon* v. *Jones*, 291 Conn. 384, 407, 968 A.2d 416 (2009); permit the court, as a matter of law, to limit the class of individuals with whom the plaintiff may be compared to draw an inference of unlawful discrimination.

We agree with the court that the plaintiff's categorical identification of surgical residents in other years of residency whom the plaintiff characterized as comparable did not make it improper for the court to decide which residents were, in fact, sufficiently similar in their employment status to provide a basis for a discrimination claim. The plaintiff failed to make a threshold showing to the contrary.

B

The plaintiff argues that the court's ruling was improper even as an evidentiary matter because all surgical residents were, in fact, similarly situated in all *material* respects, and that is all the law required her to show. *Shumway* v. *United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "We review evidentiary claims under the abuse of discretion standard. Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on

the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Coccomo*, 115 Conn. App. 384, 397, 972 A.2d 757, cert. granted on other grounds, 293 Conn 909, 978 A.2d 1111 (2009). We must decide, therefore, whether, under the circumstances of the present case, the court abused its discretion in determining that the evidence proffered by the plaintiff did not relate to residents who were sufficiently "similarly situated" in all material respects to be probative of her claim of discrimination.

*Graham* holds that an employee offered for comparison will be deemed to be similarly situated in all material respects if "(1) . . . the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) . . . the conduct for which the employer imposed discipline was of comparable seriousness." *Graham* v. *Long Island Rail Road*, supra, 230 F.3d 40. In the present case, in addition to the lack of evidence that residents of other years were subject to the same workplace standards, the plaintiff failed to introduce evidence that any other resident was alleged to have engaged in conduct as serious as abrogating patient care and responsibilities or had been criticized for being untrustworthy, dishonest or deceitful. On this record, we are persuaded that the court did not abuse its discretion in excluding the evidence offered by the plaintiff concerning residents in different years, given the absence of any evidence satisfying either prong of the *Graham* test for determining if individuals are similarly situated.

In sum, we conclude that the judgment of the court in favor of the defendant must be affirmed. The plaintiff's failure to present evidence to the jury about the defendant's destruction of a computer hard drive that allegedly contained evidence unfavorable to the defendant

defeats her claim that she was entitled to an adverse inference charge. The plaintiff's failure to present evidence that her position as a fourth year resident was sufficiently similar to that of residents in other classes supports the court's exclusion of evidence of their employment record.

The judgment is affirmed.

In this opinion the other judges concurred.