STATE OF CONNECTICUT *v.* SCOTT WINER
(AC 26554)

Bishop, Harper and Foti, Js.

Submitted on briefs December 2, 2008—officially released February 3, 2009

*Deborah G. Stevenson,* special public defender, filed a brief for the appellant (defendant).

*Scott J. Murphy,* state's attorney, *Lisa A. Riggione,* senior assistant state's attorney, and *Christian M. Watson,* assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

BISHOP, J. This case is before us on remand from our Supreme Court.[1] The defendant, Scott Winer, appeals from the judgment of conviction, rendered after a jury trial, of failing to comply with the sex offender registration requirements of General Statutes § 54-251 (a). The remaining claims before us are whether (1) there was sufficient evidence to support the defendant's conviction and (2) the court properly instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 26, 1998, the defendant was convicted of illegal sexual contact with a victim younger than age sixteen in violation of General Statutes § 53-21 (2). On January 19, 2000, while an inmate at Enfield Correctional Institution, the defendant met with counselor Donald Cyr to complete sex offender registration forms. The forms seek general information, including the

---

[1] This court previously reversed the defendant's conviction on the ground that he was entitled to a dismissal pursuant to General Statutes § 54-142a (c). *State* v. *Winer,* 99 Conn. App. 579, 915 A.2d 883 (2007). The Supreme Court reversed that decision and remanded the matter for consideration of the defendant's remaining claims. *State* v. *Winer,* 286 Conn. 666, 945 A.2d 430 (2008).

address where the inmate will reside after release. The forms contain sex offender advisement requirements delineating the inmate's responsibilities after release and indicate that the failure to comply with any of these requirements is punishable as a class D felony. The defendant told Cyr that he lost his home when he was incarcerated and, consequently, did not know where he would live when he was released. Cyr construed his explanation as a refusal to give an address and indicated that on the forms. Cyr indicated that the forms provide that one must register with the department of public safety within three days of release. Cyr filled in the forms using information provided by the defendant, and the defendant signed the forms without indicating a residence address.

On March 13, 2000, Judith Cianchetti, a sex offender specialist assigned to the Bristol office of adult probation, met with the defendant to advise him again of the conditions of his probation prior to his release. At that time, Cianchetti asked the defendant for his address as required by the conditions of his probation. The defendant did not provide an address and told Cianchetti that he did not know where he would be living. He indicated that he was going to look for an apartment and might move to Massachusetts. Cianchetti informed the defendant that he could not leave the state without permission and scheduled an appointment for him to report to probation immediately upon his release.

The defendant was released from custody on March 24, 2000. Richard Berglund, the supervisor of adult probation at the Bristol office, met with the defendant three days later, as scheduled, on March 27, 2000. Berglund reviewed with the defendant the conditions of his probation and inquired as to his address. The defendant indicated that on March 24, the day of his release, he had traveled to Massachusetts and put a deposit on an apartment there. Berglund told the defendant that he

did not have permission to go to Massachusetts. The defendant told Berglund that he had stayed with his former college roommate at the Farmington Marriott for a couple of days after he was released and that he had slept in a car on March 26. Berglund gave the defendant the address of a local shelter, but the defendant later informed him that the shelter was full and that he slept at a bus station. At the defendant's request, on March 27, Berglund submitted an application to transfer the defendant's probation to Massachusetts, which was denied later that day.

The defendant had another appointment with Berglund scheduled for March 28, but he went to the Hartford office instead and asked that his probation be transferred there. The defendant then failed to call Berglund on March 29, as scheduled. On March 30, the defendant called Berglund but did not indicate where he was staying. Later that day, the defendant told Berglund that he planned to stay with a friend on Grant Street in Waterbury. On March 31, the defendant called Berglund and informed him that he was flying to Florida that evening.

Trooper Thomas Karanda was the sole enforcement officer at the sex offender registration unit (unit) at the time of the defendant's release. At trial, he testified that all inmates are advised that they must report to the unit within three days of their release to verify where they are living. He explained that when newly released registrants do not have an address, they provide the unit with daily updates on their location until they find housing so that the unit's records always reflect the registrant's current location. Karanda received the defendant's registration forms on March 20, 2000. Neither the defendant's registration forms nor his file contained his residence address. The defendant did not contact the unit between the date of his release on March 24 and April 1, 2000. Consequently, the defendant was arrested

for failing to comply with the registration requirements in violation of § 54-251. The defendant was subsequently found guilty as charged and was sentenced to three years imprisonment, suspended, with three years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence was insufficient to convict him of violating § 54-251. The defendant's claim in this regard is twofold. The defendant claims that he was homeless and that it was, therefore, impossible for him to comply with the statute because he did not have a residence address. The defendant also contends that he did not intentionally violate the statute. We are unpersuaded.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Owens*, 100 Conn. App. 619, 635, 918 A.2d 1041, cert. denied, 282 Conn. 927, 926 A.2d 668 (2007).

General Statutes § 54-251 (a) provides in relevant part: "Any person who has been convicted . . . of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community . . . shall, within three days following such release . . . and whether or not such person's place of residence is in this state, register such person's

name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct . . . ."

With these principles in mind, we address the defendant's claims in turn.

A

The defendant claims that it was impossible for him to comply with the statute because he did not have a residence address. The defendant's claim requires us to construe the meaning of the term "residence address," which is not defined in the statute. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . In addition, General Statutes § 1-1 (a) provides in relevant part that words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. . . . When a statute does not define a term, we look to the common understanding expressed in the law and in dictionaries." (Citation omitted; internal quotation marks omitted.) *Fillion* v. *Hannon*, 106 Conn. App. 745, 751, 943 A.2d 528 (2008).

Here, the defendant requests us to construe a "residence address" as "a place in which one lives habitually for a considerable period of time." The defendant based this request at trial on definitions from Random House and Webster dictionaries in which the term "reside" is defined as "to dwell permanently or for a considerable period of time." Instead, the court instructed the jury, in accordance with the definition from Ballentine's Law Dictionary, that a residence is "any place of abode or dwelling place, however temporary it may be." Although "residence" may be defined in different ways, the definition employed by the court is consistent with the intent of the statute, which is to keep track of sex offenders in an attempt to reduce recidivism. See 41 H.R. Proc., Pt. 11, 1998 Sess., p. 3765; *State* v. *Arthur H.*, 288 Conn. 582, 590, 953 A.2d 630 (2008); *State* v. *Waterman*, 264 Conn. 484, 490, 825 A.2d 63 (2003); *State* v. *Kelly*, 256 Conn. 23, 95, 770 A.2d 908 (2001).

Accordingly, the defendant's residence during the relevant time period was wherever he was dwelling, no matter how temporary a situation. On this basis, the defendant could have complied with the statute simply by informing the unit where he was staying in a timely manner. In fact, Karanda testified that newly released registrants who have not yet secured housing typically update the unit daily as to their location. He stated that some registrants indicate that they are homeless but are still looking for a place to live. He has had registrants indicate that they are sleeping under a bridge or that they use the police department as an address and give daily updates from that location indicating that they are still looking for housing. In this way, Karanda stated, the unit is aware of the registrant's approximate location and that the registrant is still searching for a place to live. The state posits, and we agree, that an adoption of the defendant's proposed definition would excuse homeless and temporarily housed sex offenders from

compliance, thereby frustrating the intent of the statute to maintain records of the offenders' locations for the purpose of public safety. On the basis of the foregoing, we conclude that the evidence was sufficient to convict the defendant because he failed to provide his residence address to the unit.

## B

The defendant also claims that there was insufficient evidence to sustain his conviction because he did not intentionally violate § 54-251. Because the sex offender registry was created for the benefit of public safety, "the crime of failing to comply with [its] requirements is a strict liability offense." *State* v. *T.R.D.*, 286 Conn. 191, 220, 942 A.2d 1000 (2008). Thus, the state was not required to prove that the defendant intentionally violated the statute. Accordingly, the defendant's sufficiency claim fails.

## II

The defendant next claims that the court improperly denied his request to charge the jury on the affirmative defense of mistake of law.[2] Under General Statutes § 53a-6 (b), a person may be relieved of criminal liability if he engages in the proscribed conduct "under a mistaken belief that it does not, as a matter of law, constitute an offense [and] such mistaken belief is founded upon an official statement of law contained in . . . an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law."

---

[2] The defendant also claims that the court improperly instructed the jury as to the definition of "residence address" and intent. On the basis of our analyses in part I, we conclude that the court properly instructed the jury in that regard.

Our review of the record does not reveal any evidence that any public official made a misstatement of the law on which the defendant relied in his conduct. Thus, § 53a-6 is not implicated in this case. Accordingly, the court properly refused to give the defendant's requested charge.

The judgment is affirmed.

In this opinion the other judges concurred.