******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSEPH EDWARDS
(AC 34279)

Lavine, Beach and Bear, Js.

*Argued November 15, 2013—officially released March 18, 2014*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, Keegan, J.)

*Deren Manasevit*, assigned counsel, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *Kevin D. Lawlor*, state's
attorney, and *John E. Barney*, assistant state's attorney,
for the appellee (state).

*Opinion*

LAVINE, J. The dispositive question in this appeal is what constitutes a change of address for the purposes of our sex offender registration statutes. The defendant, Joseph Edwards, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32 (a), following an arrest on a charge of failing to register as a sex offender in violation of General Statutes § 54-251 (a) and (e).[1] On appeal, the defendant claims that the court erred when it interpreted § 54-251 and that there was insufficient evidence to prove that he violated his probation.[2] We agree with the defendant and, accordingly, reverse the judgment of the trial court.[3]

The following evidence, as adduced at the probation violation hearing, is relevant to our resolution of this appeal. As a result of previous criminal convictions, the defendant is required to register as a sex offender for life. In June, 1999, the defendant was convicted of first degree robbery and sentenced to twenty years incarceration, execution suspended after ten years, followed by five years probation. The defendant's probationary period for the robbery conviction began on December 17, 2008, and continued to December 17, 2013. As a standard condition of probation, the defendant agreed not to violate any criminal laws. On August 13, 2010, the defendant was arrested for failing to notify the Commissioner of Public Safety (commissioner) of an address change pursuant to § 54-251.[4] Thereafter, the defendant was charged with a violation of probation.

At the probation violation hearing conducted on October 26, 2011, the court heard testimony from two witnesses and the defendant. Brian Reilly, a West Haven police officer, testified that the address on file with the Connecticut Sex Offender Registry for the defendant was 73 Fresh Meadow Road. He stated that on August 12, 2010, he received a complaint from the owner of a warehouse located at 15 Center Street that the defendant, who had been renting a storage space since May, 2010, had been living in the warehouse. Reilly testified that on August 12, 2010, he went to 73 Fresh Meadow Road to verify that the defendant was still residing there. Reilly testified that he found no evidence that the defendant was living in the residence at 73 Fresh Meadow Road.

Carla Scinto, the defendant's probation officer, testified that the defendant told her that he had been evicted from the home on 73 Fresh Meadow Road on July 13, 2010, and that he had been living in his box truck on the rear of the property. The defendant, on the other hand, testified that in June, 2010, he had been evicted from 73 Fresh Meadow Road, but that he had continued to live inside the home on 73 Fresh Meadow Street on the second floor. He also stated that the electric bill

remained in his name through September, 2010. Finally, he testified that when the police arrested him, they found him at 73 Fresh Meadow Road.

The court found by a preponderance of the evidence that the defendant had violated § 54-251 (a) and (e) because he was homeless and did not inform the commissioner of this fact. Accordingly, the court found that the defendant had violated the term of his probation that he not violate any criminal laws. The court stated: "[W]hether he was living in a warehouse or whether he was living in a truck on the property does not satisfy the requirement of keeping the registry informed as to what your residential address is. . . . Living in a truck does not equal a residence; it equals homeless. Living in a warehouse equals homeless. *And because he was homeless he had the obligation to keep the [commissioner] notified of the fact that he was now homeless. . . .* So, the court does find by a preponderance of the evidence that the defendant violated his conditions of probation, specifically the first condition that he not violate any laws of the state of Connecticut or the United States." (Emphasis added.) The trial court revoked the defendant's probation and sentenced him to the remaining portion of his suspended sentence. This appeal followed.[5]

On appeal, the defendant claims that the court misinterpreted § 54-251 and that there was insufficient evidence to support the court's finding that the defendant had violated his probation by failing to inform the commissioner of an address change pursuant to § 54-251 (a) and (e). The defendant claims that the court erred when it interpreted the term "change of address" as used in that statute. We agree with the defendant.

We begin by setting forth the legal principles and the standard of review pertinent to our discussion. "To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous." (Citation omitted; internal quotation marks omitted.) *State* v. *Welch*, 40 Conn. App. 395, 401, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996).

"A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it . . .

*or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 80–81, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003).

"The requirements of the statute present a question of statutory construction over which we exercise plenary review. . . . When construing a statute, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1–2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretative guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . We presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . .

"[W]hen the statute being construed is a criminal statute, it must be construed strictly against the state and in favor of the accused. . . . [C]riminal statutes [thus] are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . Rather, penal statutes are to be construed strictly and not extended by implication to create liability which no language of the act purports to create. . . . Further, if, after interpreting a penal provision, there remains any ambiguity regarding the legislature's intent, the rule of lenity applies. It is a fundamental tenet of our law to resolve doubts in the enforcement of a [P]enal [C]ode against the imposition of a harsher punishment." (Citations omitted; internal quotation marks omitted). *State* v. *Drupals*, 306 Conn. 149, 159–160, 49 A.3d 962 (2012).

To determine whether the court properly found that the defendant *changed* his residence address, and thereby violated § 54-251 (a) and (e) by not informing the commissioner of this change, we must ascertain what constitutes a residence address for the purposes of our sex offender registration statutes. The defendant argues that the court improperly construed the term "change of address" and that the court erred when it

concluded that becoming homeless necessarily means there has been a change of address. The state, on the other hand, argues that the court properly construed § 54-251 (a) and (e) to require sex offenders to notify the registry when they become homeless.[6]

In *State* v. *Drupals*, supra, 306 Conn. 163, our Supreme Court held that the term "residence address" means "the act or fact of living in a given place for some time . . . ." The Supreme Court also noted that, "[t]he definition of residence we adopt today furthers the purpose of [§ 54-251], which is to allow the [commissioner] to keep track of the registrant's location . . . ." Id., 165. Moreover, our Supreme Court noted that the legislature intended "residence address" to be "synonymous with 'place of residence,' or more precisely, to denote the physical description of where the registrant resides." Id., 161 n.7.

Having reviewed the record, we determine that the court's implicit conclusion that homelessness always equals a change of address was in error. The fallacy of the court's conclusion is demonstrated by this case, in which there were two scenarios that were entertained by the court, one that had the defendant living in the warehouse, and the other that had him living in his truck on the premises of 73 Fresh Meadow Road.[7] Although the defendant in both instances could be considered homeless because he had been evicted and was without a dwelling, he would have experienced a change of address only if he was found to have been living in the warehouse. Living in the truck on the premises of 73 Fresh Meadow Road would not be a change of residence address because the defendant's location remained the same.

We conclude therefore that in order to establish that the defendant had violated his probation by failing to notify the commissioner of a change of residence address pursuant to § 54-251 (a) and (e), it was incumbent on the state to prove that the defendant acquired a residence address different from the one on file with the registry. In this case, that meant proving that the defendant was "living in a given place for some time"; *State* v. *Drupals*, supra, 306 Conn. 163; at some location other than 73 Fresh Meadow Road.

On the basis of our review of the record, it is clear to us that the court based its finding that the defendant violated the terms of his probation on an erroneous view of the law, specifically that a finding of homelessness always constitutes a change of address. The court made no other findings supporting the conclusion that the defendant changed his residence address, such as ruling that the defendant was living in the warehouse.[8] We therefore conclude that the court's finding that the defendant violated his probation as a result of having violated the criminal law of this state was clearly erroneous.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion the other judges concurred.

[1] General Statutes § 54-251 provides in relevant part: "(a) Any person who has been convicted . . . of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community . . . shall, within three days following such release . . . and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record and *residence address* . . . with the Commissioner of Emergency Services and Public Protection, on such forms and in such locations as the commissioner shall direct . . . . If any person who is subject to registration under this section *changes such person's address*, such person shall, without undue delay, notify the Commissioner of Emergency Services and Public Protection in writing of the new address . . . .

"(e) Any person who violates the provisions of subsection (a) of this section shall be guilty of a class D felony, except that, if such person violates the provisions of this section by failing to notify the Commissioner of Emergency Services and Public Protection without undue delay of a change of name, address or status or another reportable event, such person shall be subject to such penalty if such failure continues for five business days." (Emphasis added.)

[2] The defendant also claims that § 54-251 is unconstitutionally vague as applied to him. We do not reach this claim in view of our conclusion that the judgment of the trial court must be reversed.

[3] Following the revocation of the defendant's probation, the state nolled the failure to register charge, which was the basis of the defendant's violation of probation.

[4] We note that the Commissioner of Public Safety is now called the Commissioner of Emergency Services and Public Protection, and § 54-251 was revised by Public Acts 2011, No. 11-51, § 134 (a) to reflect that change. For purposes of clarity, we refer to the current revision of the statute.

[5] After filing this appeal, the defendant filed a motion for articulation, which was denied.

[6] The state argues that the "judicial gloss" provided by *State* v. *Winer*, 112 Conn. App. 458, 963 A.2d 89, cert. denied, 292 Conn. 903, 973 A.2d 107 (2009), requires that any registrant who is homeless update the commissioner on a daily basis. We reject this expansive reading of *Winer* as it has no support in the plain language of § 54-251. Whether a person has a home or is homeless for the purposes of the statute is not determinative. Under the statute a person needs to provide notification of a change of address. To be sure, a homeless registrant may be required to frequently update authorities of *changes* of address, but this frequency is not the product of being homeless per se, but rather flows from being transient. For example, a homeless person may elect to sleep on a particular park bench, so long as he has informed the commissioner of his location and returns to that particular bench daily, he may be considered in compliance. See, id., 466 (noting that registrant may "indicate that they are sleeping under a bridge"). We read the holding in *Winer* as merely rejecting the argument that a homeless person cannot comply with § 54-251 for lack of a residence address. Id., 465–66.

We observe that compliance with the sex offender registration statutes is often complicated by homelessness. See *State* v. *Drupals*, supra, 306 Conn. 165 (noting that transitory nature of homelessness complicates sex offender registration). Although we recognize this problem, our legislature has not implemented provisions that directly address the problem of the transient registrant. Compare Cal. Penal Code § 290.011 (a) (transient offenders must register every thirty days and report all "places where he or she sleeps, eats, works, frequents, and engages in leisure activities").

[7] In response to a question from this court during oral argument, the state indicated that the defendant would have experienced a change of address even if he was found to have been living on the porch of the dwelling at 73 Fresh Meadow Road. The state contends that once he was evicted, the defendant's address was changed, notwithstanding the fact that his physical whereabouts remained the same. We reject this expansive reading of § 54-251. There is nothing in the statute that suggests that a registrant needs to specify where on a particular piece of property he is actually residing. Thus, the proposition that a registrant must inform the commissioner that he is

living in a truck, tent, or on the porch of the dwelling house is not supported by the language of the statute. Accordingly, there is no authority to suggest that the defendant was not in fact in compliance if he was found to be living in his truck at 73 Fresh Meadow Road.

We note that other appellate courts have reached similar conclusions. In *State* v. *Stratton*, 130 Wn. App. 760, 762, 124 P.3d 660 (2005), an appellate decision from Washington state, the defendant was a sex offender who was required to notify the police of changes to his address. The defendant purchased a new home and registered the address accordingly. Id. Months later, the defendant defaulted on the purchase and voluntarily moved out of the dwelling house. Id. The defendant, however, continued to live in his car, which he parked in the house's driveway. Id., 763. At trial, the court found that he was "transient" and rendered a judgment of conviction. Id., 764. On appeal, the Washington Court of Appeals reversed the judgment and reasoned: "[The defendant] continued to sleep at the [home]; he also got his mail there and continued to receive telephone service . . . . [He] had no definite departure date. . . . [The defendant's] living situation fits the definition of residence as a 'place' where he was abiding or dwelling, and it was 'fixed' in that it was not subject to change or fluctuation." Id., 766; see also *Robinson* v. *State*, 6 So. 3d 677, 678–79 (Fla. App. 2009) (sex offender who listed homeless shelter that did not accept sex offenders as his residence did not experience change of address when he slept outside shelter).

[8] The state presented no evidence that established that the police were unaware of the defendant's location, nor any evidence that the defendant was attempting to avoid registering a new address. When he met with his probation officer, he was candid about the pending eviction. Moreover, the state has not contested the fact that when the defendant was arrested on August 13, 2010, he was taken into custody at 73 Fresh Meadow Road.

––––––––––––––––––––––––––––