JAMES WALKER *v.* DEPARTMENT OF CHILDREN
AND FAMILIES
(AC 34316)

Lavine, Robinson and Alvord, Js.

Argued October 9—officially released December 3, 2013

*Josephine Smalls Miller*, for the appellant (plaintiff).

*Peter M. Haberlandt*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Antoria D. Howard*, assistant attorney general, for the appellee (defendant).

*Opinion*

ALVORD, J. In this employment discrimination case, the plaintiff, James Walker, appeals from the summary

judgment rendered by the trial court in favor of the defendant, the Department of Children and Families (department). The plaintiff claims that the court improperly failed to conclude that there was a genuine issue of material fact with respect to his allegations that the department terminated his employment on the basis of his race, color and gender in violation of General Statutes § 46a-60 of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. We affirm the judgment of the trial court.

The following facts, as provided in the pleadings and the evidence submitted by the parties in support of the department's motion for summary judgment and the plaintiff's opposition thereto, are relevant to the disposition of the plaintiff's appeal. The plaintiff, an African-American male, was hired by the department as a social worker on June 14, 2004. When hired, he was notified that he was required to successfully complete a ten month working test period that would end on May 1, 2005. Initially, he was assigned to a unit supervised by Dakibu Muley. He was not required to perform any court work related to his clients at that time. His first performance evaluation, dated August 30, 2004, was prepared by Muley and was generally favorable. In December, 2004, the plaintiff was transferred to a different unit supervised by Lisa Llanes. In addition to servicing children and families in need, the plaintiff now was required, inter alia, to prepare documents to be filed in court and to attend court proceedings. When the plaintiff began working in the new unit, Llanes advised him of the importance of being organized; preparing documents ahead of schedule so that they could be reviewed by her, the program supervisor and the department's attorney prior to filing them in court; attending scheduled appearances in court; and time management. Llanes had "supervision meetings" with the plaintiff once a week.

On February 22, 2005, the plaintiff missed a permanency plan hearing scheduled before the court, *Hon. Frederica S. Brenneman,* judge trial referee, at the Superior Court for Juvenile Matters in New Haven. Judge Brenneman ordered that the worker assigned to the case, i.e., the plaintiff, submit a letter explaining his absence. In his letter in response to Judge Brenneman's order, the plaintiff stated: "I apologize and I can't offer an excuse for missing the court hearing . . . . I have implemented a system that will help me be better organized so this will not happen again." Less than two weeks later, the plaintiff missed another court hearing scheduled for March 1, 2005, again before Judge Brenneman. Because of his absence, Judge Brenneman dismissed the department's motion to modify protective supervision to commitment, and protective supervision of the child at issue was allowed to expire. Approximately one week later, the plaintiff failed to file in court a motion to maintain commitment and permanency plan that was due on March 9, 2005. Because the motion was not timely filed, the court, *Turner, J.,* set a new deadline of March 10, 2005, and informed the department that it would be required to show cause why it should not be held in contempt if it failed to comply with the new deadline. The plaintiff was given a formal notice on March 17, 2005, regarding these incidents and, additionally, was advised that he had not been completing court documents in a timely manner to allow for review by his supervisors prior to filing in court. Despite the department's admonitions, the plaintiff failed to provide Llanes with a revised termination of parental rights petition that was due on April 3, 2005. Llanes sent the plaintiff an e-mail on April 13, 2005, inquiring as to the status of that petition.

By letter dated April 29, 2005, the department terminated the plaintiff from his employment as a social worker. The letter provided as follows: "The purpose

of this letter is to advise you that you are being dropped during your working test period as a Social Worker Trainee for the Department of Children and Families, effective May 13, 2005, close of business. This action is being taken based upon your less than satisfactory performance of your duties and responsibilities." After exhausting the department's internal procedures for review of his termination, the plaintiff commenced the present action claiming that he was "discriminatorily terminated" on the basis of his race, color and gender.[1] In his two count complaint, the plaintiff alleged that (1) the "[department] applied a harsher standard of review to [the plaintiff's] job performance than to his nonblack and female counterparts," (2) the "[department] provided additional assistance and guidance to [the plaintiff's] white counterparts in order to help them become successful in their positions and to pass their working test periods," and (3) the "[plaintiff] was not provided the same assistance and guidance."

On July 8, 2011, the department filed a motion for summary judgment claiming that it was "entitled to a judgment as a matter of law because the plaintiff has failed to provide any evidence that would support his claims that he was discriminated against based on his race, color or gender." Additionally, in support of its motion, the department filed a memorandum of law, two affidavits with attached exhibits,[2] and portions of

---

[1] The plaintiff timely filed a complaint of discrimination with the Commission on Human Rights and Opportunities (commission), and the commission issued a release of jurisdiction on August 28, 2007.

[2] "In reviewing the legal basis for summary judgment, this court properly may consider facts contained in the affidavits submitted in support of, or in opposition to, the motion." *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 533, 923 A.2d 638 (2007).

Practice Book § 17-46 provides that supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto."

the plaintiff's deposition transcript. The plaintiff filed his opposition to the motion for summary judgment, together with his affidavit and attached exhibits, and included selected portions of his deposition transcript.[3] The court heard argument on October 24, 2011.

The court issued its well reasoned and comprehensive memorandum of decision on January 26, 2012. The court concluded that the plaintiff failed to make a prima facie case of discrimination because he failed to establish that he was qualified for the position and performed the job satisfactorily, and he failed to demonstrate that the adverse action occurred under circumstances giving rise to an inference of discrimination. Further, the court determined that even if the plaintiff had established a prima facie case of discrimination, he failed to refute the department's legitimate nondiscriminatory reason for terminating his employment under the burden shifting analysis set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[4] For those reasons, the court granted the department's motion for summary judgment and rendered

[3] The record does not include the entire transcript of the plaintiff's deposition taken on April 14, 2011. In its appellate brief, the department represented that the plaintiff was the only person deposed during the pendency of this action. The plaintiff confirmed this fact at oral argument before this court.

[4] "[T]he analytical framework set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, [supra, 411 U.S. 802] (*McDonnell Douglas*), and its progeny is used to determine whether a complainant may prevail on a claim of disparate treatment under our state law. See, e.g., *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 791 A.2d 518 (2002). '*McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases. . . . First, the [complainant] must establish a prima facie case of discrimination. . . . In order to establish a prima facie case, the complainant must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination.' . . . *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 505, 832 A.2d 660 (2003). Once the prima facie case has been established, the employer must then produce legitimate, nondiscriminatory reasons for

judgment in favor of the department. This appeal followed.

Our review of the trial court's decision to grant the department's motion for summary judgment is plenary. See *Macellaio* v. *Newington Police Dept.*, 145 Conn. App. 426, 429, 75 A.3d 78 (2013). "The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter

its adverse employment action. See, e.g., *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). 'This burden is one of production, not persuasion; it can involve no credibility assessment.' . . . Id. Once the employer produces legitimate, nondiscriminatory reasons for its adverse employment action, the complainant then must prove, by a preponderance of the evidence, that the employer intentionally discriminated against him. See, e.g., id., 143. 'Although intermediate evidentiary burdens shift back and forth under this framework, [t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [complainant] remains at all times with the [complainant]. . . . [I]n attempting to satisfy this burden, the [complainant]— once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.' . . . Id." *Dept. of Transportation* v. *Commission on Human Rights & Opportunities*, 272 Conn. 457, 463 n.9, 863 A.2d 204 (2005).

of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . *The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *Gianetti* v. *Health Net of Connecticut, Inc.*, 116 Conn. App. 459, 464–65, 976 A.2d 23 (2009).

"[T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings

do not constitute proof of the existence of a genuine issue as to any material fact. . . .

"Although the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Citation omitted; internal quotation marks omitted.) *Tuccio Development, Inc.* v. *Neumann,* 111 Conn. App. 588, 594, 960 A.2d 1071 (2008). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." *Home Ins. Co.* v. *Aetna Life & Casualty Co.,* 235 Conn. 185, 202–203, 663 A.2d 1001 (1995). "Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial. See *Farrell* v. *Farrell,* 182 Conn. 34, 39, 438 A.2d 415 (1980) ('[i]ndeed, the whole summary judgment procedure would be defeated if, without any showing of evidence, a case could be forced to trial by a mere assertion that an issue exists')." *Great Country Bank* v. *Pastore,* 241 Conn. 423, 436, 696 A.2d 1254 (1997).[5]

In the present case, the plaintiff alleged in his complaint that the department unlawfully terminated him

[5] In the plaintiff's brief in opposition to the motion for summary judgment and during oral argument before this court, it was suggested that we should evaluate a court's granting of a motion for summary judgment by the following standard set forth in a Rhode Island case: "A judge's function when considering a summary judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried; rather, only if the case is dead on arrival, should the court take the drastic step of administering the last rites by granting summary judgment." *Mitchell* v. *Mitchell,* 756 A.2d 179, 185 (R.I. 2000). Simply put, that is not the standard we employ in our review of summary judgments rendered by our trial courts. We follow the well established principles set forth in our rules of practice and appellate case law that support the granting of a motion for summary judgment under appropriate circumstances.

from employment during his working test period on the discriminatory basis of race, color and gender. The plaintiff alleged that the improper basis for his termination was evidenced by the department's disparate treatment of him in comparison with his "nonblack and female counterparts." He alleged that his work performance was subject to a harsher standard of review and that he was not provided with the same assistance and guidance as provided to his "white counterparts."

In support of his claim of disparate treatment,[6] the plaintiff averred in his affidavit: (1) Llanes "would have meetings with only the female members of the unit in her office"; (2) he believed those meetings were work related because "they would often carry work files and papers with them"; (3) the meetings "seemed to occur at least weekly"; (4) he "was never invited to sit in on any of these meetings"; (5) Llanes did not remind him of the court appearance on the day that he missed it and mentioned it only after the time had passed; (6) the court liaison person did not contact him immediately when he failed to appear in court even though that person had notified others when they had forgotten their court dates; (7) Llanes had "informed [him]" that a white family "probably did not accept [his] advice [about the need for drug treatment] because they found it difficult to take advice from a black male"; (8) the

_____

[6] "[D]isparate treatment simply refers to those cases where certain individuals are treated differently than others. . . . The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status." (Citation omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104, 671 A.2d 349 (1996).

"When a [complainant] alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision. . . . That is, the [complainant's protected trait] must have actually played a role in [the employer's decisionmaking] process and [have] had a determinative influence on the outcome." (Internal quotation marks omitted.) *Board of Education* v. *Commission on Human Rights & Opportunities*, 266 Conn. 492, 505, 832 A.2d 660 (2003).

court work assigned to him "was pretty advanced for a new social worker"; and (9) a white female employee cursed a black supervisor and was not disciplined for the misconduct.

In the portions of his deposition transcript submitted with his opposition to the motion for summary judgment, the plaintiff recounted two additional incidents of alleged disparate treatment. He testified that he was asked once or twice to accompany a white female coworker to her home visits in a black urban area because she was concerned about her safety. He further testified that another white coworker, during that worker's working test period, received assistance from his supervisor and other white coworkers when he became frustrated with the department's computerized data system and indicated that he wanted to quit. When that coworker asked for additional assistance with the system, it was provided to him.

The trial court concluded that the plaintiff met only two of the four prongs necessary to establish his prima facie case of discrimination. See footnote 4 of this opinion. The court determined that the plaintiff was a member of a protected class because he is an African-American male (prong one). The court also determined that the plaintiff suffered an adverse employment action by virtue of his dismissal from employment (prong three). The court concluded, however, that the plaintiff had not established that he was qualified for his former position and had performed his duties satisfactorily (prong two), nor had he demonstrated that the adverse action occurred under circumstances giving rise to an inference of discrimination (prong four).

In its analysis of prong two, i.e., whether the plaintiff was qualified for the position of social worker, the court stated that the department had produced uncontradicted evidence that the plaintiff had been advised of

his responsibilities concerning time management, attending scheduled court appearances and timely submitting documents to his supervisors for review prior to the court deadlines for filing those documents. Nevertheless, the plaintiff repeatedly failed to perform satisfactorily by missing court appearances, failing to file a motion in court on the designated day, and failing to prepare his documents in time for review by his supervisors. These failures resulted in adverse consequences to the department. The plaintiff did not deny these incidents, and he gave no excuses, other than simply having forgotten the court dates or deadlines. Moreover, the plaintiff's deficiencies in performance occurred during his working test period. Permanent employment as a social worker was expressly conditioned on the successful completion of his ten month working test period.

With respect to the fourth prong to establish a prima facie case, i.e., the requirement to show that the adverse action occurred under circumstances giving rise to an inference of discrimination,[7] the court determined that

---

[7] The plaintiff claims that he relied not only on inferences of discrimination, but that he also presented the trial court with "direct evidence of discriminatory motivation" in connection with a particular conversation with Llanes. According to the plaintiff, he told Llanes that he had given advice regarding the need for drug treatment to a Caucasian family, and they refused to listen to that advice. Llanes allegedly told him that "the family probably did not accept my advice because they found it difficult to take advice from a black male." The plaintiff claimed that Llanes remark constituted "a direct statement to him evidencing her racially discriminatory intent."

In its memorandum of decision, the court noted that the remark was addressed to the plaintiff's experience in working with his clients, that his interaction with his clients was not the articulated reason for his termination, and that "evidence of this statement alone does not allow for the inference that the plaintiff was treated differently because of his race. The plaintiff . . . does not present any evidence showing that other individuals' races and genders were not mentioned when evaluating client interactions."

We agree with the court that this single statement, which was the entirety of the plaintiff's direct evidence of discriminatory motivation, is insufficient to raise a triable issue of discriminatory intent. No evidence was offered

the plaintiff's claim of disparate treatment[8] failed for lack of evidence. The court found that the plaintiff failed to provide information to show that the individuals that he claimed received preferential treatment were "similarly situated."[9] To support a claim of disparate treatment, a plaintiff "may present circumstantial evidence from which an inference may be drawn that similarly situated individuals were treated more favorably" than the plaintiff was treated. *Paylan* v. *St. Mary's Hospital Corp.*, 118 Conn. App. 258, 266, 983 A.2d 56

regarding the circumstances surrounding Llanes remark or the context in which it was given. The plaintiff did not depose Llanes, and he did not allege that he suffered any adverse consequences as a result of his interaction with that family. Without more, any inference of discriminatory intent would be based on nothing more than mere speculation or conjecture.

[8] "A plaintiff may raise such an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 39 (2d Cir. 2000).

Although this case is based solely on Connecticut law, we use federal precedent concerning employment discrimination for guidance in our analysis of discrimination claims under the Connecticut Fair Employment Practices Act. See *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996).

[9] "[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness* v. *Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

"When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, we have said that the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 39 (2d Cir. 2000). "What constitutes 'all material respects' . . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . In other words, there should be an 'objectively identifiable basis for comparability.' . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." (Citations omitted.) Id., 40.

(2009). In this case, however, the court determined that the plaintiff failed to demonstrate that the other workers were (1) in their working test periods, (2) repeatedly had missed scheduled court dates or filing deadlines, or (3) were disciplined by the same supervisor.[10] Additionally, the court concluded that the plaintiff's claim that other workers received assistance when he did not was severely undercut by his own admission that they had requested the help and he never did. Significantly, the court also noted that the plaintiff failed to provide information to show that he had personal knowledge of certain events that he claimed to be evidence of disparate treatment. On the basis of the record before the court, we conclude that the trial court correctly determined that there was insufficient evidence to show that the plaintiff and the comparators identified by the plaintiff were similarly situated.[11] Accordingly, the court properly rendered summary judgment in favor of the department.[12]

---

[10] For example, the plaintiff claimed that Llanes met weekly with only the female members in the unit and that he thought that the meetings were work related because they carried work files with them. He admitted during his deposition, however, that he did not know whether they were in their working test periods. In his affidavit, he stated that he never was invited to attend those meetings, but he did not state that he requested to attend the meetings and was denied access. Furthermore, he acknowledged that he met with Llanes on a weekly basis, and the court determined that the evidence showed that the plaintiff received assistance with the organization of his computer files and calendar, and that he was given e-mail reminders of deadlines. We must conclude, therefore, that the plaintiff's claim that Llanes excluded him from weekly work meetings with female staff members on the basis of his race, color and gender was nothing more than mere speculation or conjecture.

[11] "[W]hether two employees are similarly situated ordinarily presents a question of fact . . . . [However], a court *can* properly grant summary judgment [on a discrimination claim] where it is clear that no reasonable [fact finder] could find the similarly situated prong met." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Paylan* v. *St. Mary's Hospital Corp.*, supra, 118 Conn. App. 268.

[12] In its memorandum of decision, the court noted that "[e]ven if the plaintiff had established a prima facie case of discrimination, there is no evidence that would refute the [department's] legitimate nondiscriminatory

The judgment is affirmed.

In this opinion LAVINE, J., concurred.

ROBINSON, J., concurring. I concur in the result.

reason for terminating the plaintiff, when employing the burden shifting scheme. . . . [T]he plaintiff failed to raise a triable issue of fact with regard to whether [the department's] decision to terminate him during his work testing period because he performed below a satisfactory level was a pretext." Our careful review of the record supports this determination of the trial court.