******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PHILIP A. MARASCO *v.* CONNECTICUT REGIONAL
VOCATIONAL-TECHNICAL SCHOOL SYSTEM
(AC 35169)

Beach, Sheldon and Bishop, Js.

*Argued April 21—officially released September 30, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Dooley, J.)

*Philip A. Marasco*, self-represented, the appellant
(plaintiff).

*Colleen B. Valentine*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general,
and *Ann E. Lynch*, assistant attorney general, for
the appellee (defendant).

*Opinion*

BISHOP, J. In this employment related case, the plaintiff, Philip A. Marasco, appeals from the summary judgment rendered in favor of the defendant, the Connecticut Regional Vocational-Technical School System (school system). On appeal, the plaintiff claims that the trial court improperly determined that there were no genuine issues of material fact as to whether the school system had discriminated against him in violation of General Statutes § 46a-60[1] or in violation of the Age Discrimination in Employment Act of 1967[2] (ADEA). The plaintiff claims, as well, that the court incorrectly rendered summary judgment in favor of the school system on his claim for retaliation on the ground that were there no genuine issues of material fact in support of this claim.[3]

In response, the school system makes two contentions. First, the school system claims that summary judgment was appropriate on the state law discrimination and retaliation claims because there were no genuine issues of material fact regarding these claims. The school system asserts, as well, that although the court correctly rendered summary judgment in its favor as to the plaintiff's federal ADEA claim, the court should have done so on the ground of sovereign immunity and not because of the absence of any genuine issue of material fact. In furtherance of this argument, the school system claims that neither the ADEA nor any state statute operates to denude the state of its traditional immunity from suit or liability. We agree with the school system.

The court's memorandum of decision and the record reveal the following undisputed facts and procedural history. The school system is a state regional vocational and technical school system that provides students with the opportunity to learn a technology or trade while completing their academic education. At some point in 2003, after the federal No Child Left Behind legislation[4] had passed, the school system took under consideration whether it should change its curriculum with regard to classes on reading blueprints in an effort to increase its focus on math, reading, and language arts classes. Thereafter, Abigail L. Hughes, the superintendent of the school system, approved of a curriculum change that incorporated blueprint reading into trade specific classes to significantly reduce the number of separate classes dedicated solely to blueprint reading. The implementation of the curriculum change occurred on a school-by-school basis. Each school principal was asked to determine the best method for teaching blueprint reading, given the school system's curriculum change as well as the federal and state educational mandates, the individual school's available resources, and the students' interest in the course. Teachers who taught blueprint reading classes were counseled to

apply for other teaching positions within the school system or, alternatively, to seek certification in other subject areas so that they could teach different subjects within the school system.

The plaintiff, who at all relevant times was older than fifty, was employed as a blueprint reading teacher at Eli Whitney Technical High School in Hamden (Eli Whitney). Although he had not yet been directly affected by the curriculum change, the plaintiff filed administrative complaints in February, 2005, with the Commission on Human Rights and Opportunities (commission) as well as the United States Equal Employment Opportunity Commission (EEOC), alleging age discrimination on the basis of the school system's decision to reduce the number of blueprint reading courses. While the plaintiff's administrative complaints were pending, Eli Whitney decided to eliminate its blueprint reading class for the 2005–2006 academic year.[5] The plaintiff was thus notified that the blueprint reading course he taught would be eliminated, and that if he did not find an alternative position for which he was qualified within the school system, he would serve as a permanent substitute teacher. The plaintiff elected to accept a permanent substitute position at Horace C. Wilcox Technical High School in Meriden (Wilcox) beginning on August 25, 2005. On June 29, 2005, however, the plaintiff was notified that Wilcox could no longer accommodate his position and that he would, alternatively, be transferred to W. F. Kaynor Technical High School in Waterbury (Kaynor).

At some point after the plaintiff received notice of his transfer to Kaynor, his union, the State Vocational Federation of Teachers, filed a grievance on the basis of the school system's reassignment of blueprint reading teachers to permanent substitute positions. In July, 2006, the school system and the union reached an agreement providing for a recall of these permanent substitute positions. The school system then offered the plaintiff, and he accepted, a full-time position to teach manufacturing technology at Kaynor, effective August 25, 2006.[6]

During his tenure at Kaynor, the plaintiff was the subject of numerous disciplinary actions. In response, the plaintiff amended his administrative complaints to include a claim for retaliation on the basis of these disciplinary actions. On July 19, 2006, the commission dismissed the complaint. The plaintiff, however, received a release of jurisdiction from the commission[7] as well as a right to sue letter from the EEOC, authorizing him to commence a separate civil action.

On May 24, 2007, the plaintiff filed a two count complaint in the United States District Court for the District of Connecticut, alleging that the school system had (1) discriminated against him on the basis of his age in violation of the ADEA and § 46a-60, and (2) retaliated

against him because he had filed administrative complaints against the school system. After the school system filed a motion for summary judgment, the court, Underhill, J., first dismissed the plaintiff's discrimination claims that were premised on the ADEA and § 46a-60 without prejudice on the ground that they were barred by sovereign immunity. The court then concluded that there was no genuine issue of material fact that would support the plaintiff's claim that the school system had retaliated against him and that, therefore, the school system was entitled to summary judgment on that claim.

The plaintiff filed the underlying complaint in Superior Court, dated June 19, 2009, in which he alleged that the school system had (1) discriminated against him on the basis of his age in violation of both § 46a-60 and the ADEA, and (2) retaliated against him. In support of his complaint, the plaintiff alleged that the school system instituted its curriculum change in an effort to eliminate older teachers, as blueprint reading classes were taught predominantly by teachers older than age forty. The plaintiff further alleged that the school system then began a pattern of retaliation against him as a result of his complaints with the commission and the EEOC. Specifically, he claimed that the school system monitored his classwork on a constant basis, subjected him to numerous disciplinary actions, threatened to terminate his employment, suspended him from work without pay, required him to attend disciplinary hearings, solicited students to make complaints against him, and made false accusations of incompetence and wrongdoing. The plaintiff asserted that the school system's actions constituted treatment different from that experienced by other similarly situated teachers. The plaintiff sought compensatory and punitive damages, attorney's fees, and an injunction requiring the school system to cease all retaliatory actions against him.

On August 1, 2012, the school system filed a motion for summary judgment, along with supporting documents, asserting that (1) the plaintiff's claim under the ADEA was barred by sovereign immunity, and (2) there was no genuine issue of material fact that would support the plaintiff's claims that it had discriminated against him regarding its curriculum decisions or that it had retaliated against him because he had filed administrative complaints against the school system. In response, the plaintiff filed an objection to the motion but did not attach any evidence in support of his claims or that disputed any of the assertions made by the school system in support of its motion. See Practice Book § 17-45. In a memorandum of decision filed October 15, 2012, the court found that, although the plaintiff's ADEA claim was not barred by sovereign immunity, the evidence submitted in conjunction with the school system's motion for summary judgment established that there was no genuine issue of material fact that would

support the plaintiff's claims that it had discriminated or retaliated against him. Accordingly, the court rendered summary judgment in favor of the school system on both the state and federally based discrimination claims, as well as the plaintiff's retaliation claim. This appeal followed.

On appeal, the plaintiff claims that the court improperly concluded that there was no genuine issue of material fact as to whether the school system had (1) discriminated against him on the basis of his age in violation of the ADEA and § 46a-60, and (2) retaliated against him.[8] In response, the school system argues that, although the court correctly rendered summary judgment in its favor on both counts, it improperly concluded that the plaintiff's ADEA claim was not barred by sovereign immunity.

We begin by setting forth our standard of review and the principles that guide our analysis for appeals from the rendering of summary judgment. "Our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary. . . . The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"The party opposing a motion for summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Citation omitted; internal quotation marks omitted.) *Walker* v. *Dept. of Children & Families*, 146 Conn. App. 863, 869–70, 80 A.3d 94 (2013), cert. denied, 311 Conn. 917, 85 A.3d 653 (2014). With these principles in mind, we turn now to the plaintiff's individual claims.

I

We first address the school system's argument concerning sovereign immunity because it implicates this court's subject matter jurisdiction. See *Columbia Air*

*Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). In its memorandum of decision, the trial court correctly stated that General Statutes § 46a-100 explicitly waives the state's sovereign immunity for claims against the state for employment discrimination brought under § 46a-60. The court additionally concluded, however, that the waiver of the state's sovereign immunity set forth in § 46a-100 also extends to discrimination claims brought against the state under the ADEA. On appeal, the school system contends that the plaintiff's claim brought under the ADEA is barred by sovereign immunity on the basis of its assertion that the state statutory scheme waiving sovereign immunity for violations of the state age discrimination statute, § 46a-100, does not extend to claims based on the corresponding federal statute relating to age discrimination. We agree with the school system.

"Sovereign immunity . . . presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots in this state and our legal system in general, finding its origin in ancient common law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, supra, 293 Conn. 349. Our Supreme Court has held that to bypass the doctrine of sovereign immunity, a plaintiff must demonstrate that "(1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 397, 968 A.2d 416 (2009).

In *Kimel* v. *Florida Board of Regents*, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000), the United States Supreme Court specifically addressed the issue of whether sovereign immunity bars an ADEA discrimination suit brought by a private individual against a state. Id., 66–67. The court ultimately concluded that "the ADEA does not validly abrogate the States' sovereign immunity," and, accordingly, affirmed the dismissal of the plaintiff's claims. Id., 92. In so holding, the court opined: "Our decision today does not signal

the end of the line for employees who find themselves subject to age discrimination at the hands of their state employers. We hold only that, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals. State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union. Those avenues of relief remain available today, just as they were before this decision." Id., 91–92.

In the present case, the trial court correctly noted that § 46a-100 operates to waive sovereign immunity for claims brought against the state pursuant to § 46a-60. See part II of this opinion. The court stated, however, that it saw "no basis upon which to confine that holding to discrimination claims identified as grounded only in state statutes." In so concluding, the court stated that neither the eleventh amendment[9] nor *Kimel* had any bearing on the plaintiff's ADEA claim because both precluded only claims under the ADEA brought in *federal court* and not those brought in state court. We do not so narrowly read *Kimel*.

Mindful of the basic tenets of sovereign immunity and given the absence of any state statute abrogating the protections of sovereign immunity for an ADEA claim against the school system, we believe that the school system is, in fact, immune from suit whether in state or federal court, on the basis of an alleged violation of the ADEA. Accordingly, we disagree with the court's conclusion that the plaintiff's discrimination claim under the ADEA was not barred by sovereign immunity. Because our determination implicates the court's jurisdiction over the school system, as an agent of the state, regarding the ADEA claim, we must remand that portion of the judgment to the trial court with direction to render judgment dismissing the ADEA claim on the basis of sovereign immunity.

II

We turn next to the plaintiff's claims that the court improperly rendered summary judgment in favor of the school system on his remaining discrimination claim, brought under § 46a-60, and on his retaliation claim. We discuss each claim in turn.

A

The plaintiff first claims that the court incorrectly rendered summary judgment in favor of the school system on his discrimination claim under § 46a-60[10] because the evidence before the court presented a genuine issue of material fact. We are not persuaded.

The following additional facts are relevant to this claim. In his complaint, the plaintiff asserted that the school system had eliminated blueprint reading courses in an effort to reduce the number of older teachers it employed. In support of its motion for summary judg-

ment and to rebut the plaintiff's contention, the school system submitted school Superintendent Hughes' affidavit, in which she stated in relevant part: "The [school system] decided to implement the [curriculum] change to better prepare students for the requirements of [the No Child Left Behind Act][11] and make students more skilled and competitive in their selected trade areas. This curriculum change reflected the [school system's] decision that blueprint reading, which had always been taught in part in each trade program, fit better into the trade-specific classes as taught by trade specific instructors rather than through generalized blueprint reading classes. By eliminating the redundancy in [blueprint reading] instruction, students would continue to receive [blueprint reading] instruction and, at the same time, gain access to enhanced math and language arts classes." (Footnote added.)

Hughes further attested: "The decision to consolidate the blueprint reading program into existing programs had nothing to do with the plaintiff's age. In terms of general statistics, the majority of the school system's instructors as a whole are [forty] years of age and older—specifically 80.21% of the total number of instructors, both male and female, and a specific percentage are over [fifty] years of age, approximately 51.23% . . . of the total number of instructors. . . . The [school system] employed the plaintiff until August of 2005 as a blueprint reading instructor without any change to his status. After the [blueprint] course was eliminated at Eli Whitney for the 2005–2006 school year, the plaintiff was placed in a permanent substitute position . . . without any change to his position status, salary or benefits. The plaintiff was then offered an instructing position . . . at W. F. Kaynor Technical High School . . . and has served in that capacity since that time. . . . The [school system] denies that age had anything to do with its decision to revamp the technical school system curriculum and states that the change was made in the best interest of the [school system] and its students."

In the plaintiff's deposition, transcripts of which were appended to the school system's motion for summary judgment, the plaintiff testified that, although he was initially offered a permanent substitute position, he was improperly overlooked for positions similar to his previous job as a blueprint reading teacher in favor of other, younger teachers. Notwithstanding that general claim, however, the plaintiff testified in his deposition that he could not recall which positions he was qualified for or the names of the other teachers who were similarly situated but hired in his stead. The plaintiff conceded, as well, that he was never demoted and that his pay and benefits remained the same at all times.

As a prelude to our discussion of the court's response to the school system's motion for summary judgment,

it is useful to briefly discuss the law as it relates to discrimination claims, and, in particular, to the burden shifting feature of discrimination claims. "[D]isparate treatment simply refers to those cases where certain individuals are treated differently than others. . . . The principal inquiry of a disparate treatment case is whether the plaintiff was subjected to different treatment because of his or her protected status." (Citation omitted; internal quotation marks omitted.) *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 104, 671 A.2d 349 (1996). As our Supreme Court has elucidated, "[w]hen a plaintiff claims disparate treatment under a facially neutral employment policy, this court employs the burden-shifting analysis set out by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Footnote omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 636–37, 791 A.2d 518 (2002).

Following this procedural pathway, the trial court determined that, through the affidavits, depositions and other documentary evidence attached to the motion for summary judgment, the school system had demonstrated that its actions regarding the plaintiff were not motivated by his age, but rather, were in furtherance of legitimate pedagogical goals. The failure of the plaintiff to submit any documentary evidence or to present any facts beyond mere allegations did not put into dispute the school system's recitation of the good faith basis for its personnel decisions and actions that affected the plaintiff.

We have reviewed thoroughly the complaint, the school system's motion for summary judgment and appended exhibits, the plaintiff's objection thereto and the court's memorandum of decision, and conclude, on the basis of our review, that the court correctly determined that the plaintiff failed to satisfy his burden of demonstrating the existence of a genuine issue of material fact regarding his employment status. The plaintiff failed to produce any evidence to create a genuine issue of material fact demonstrating that the school system's nondiscriminatory reason for eliminating the blueprint reading class he taught, namely, to meet the new legislative mandates, was not the true reason for its employment decision.[12] Evidence submitted by the school system established, without contradiction by the plaintiff, that the blueprint reading course was largely eliminated on the basis of the curriculum change and that the plaintiff's transfer was not related to, or even

partially motivated by, his age. Indeed, the record evidences that the school system assisted the plaintiff and other blueprint reading teachers in finding similar teaching positions once it made its curriculum determination regarding this course offering. As a result of the school system's efforts, the plaintiff did not lose his position, his benefits or his salary, but was, instead, relocated to another school with the available resources.

The plaintiff's deposition testimony, in which he asserted a claim of disparate treatment, was conclusory and unsupported by any evidence. In short, the plaintiff failed to present any evidence to counter the facts attested to in Hughes' affidavit regarding the reasons for terminating the blueprint reading classes. Accordingly, we conclude that the court properly granted the school system's motion for summary judgment as to the plaintiff's discrimination claim.

B

We turn last to the plaintiff's claim that the court incorrectly determined that there was no genuine issue of material fact concerning his retaliation claim.

The following additional facts are relevant to the plaintiff's final claim. When the school system submitted its motion for summary judgment, it attached numerous affidavits from officials within the school system. One such affidavit was from Robert Axon, the principal of Kaynor, to which the plaintiff had been transferred after the curriculum change. In his affidavit, Axon attested to the numerous disciplinary letters sent to the plaintiff, the first of which was issued approximately twenty months after the plaintiff filed his complaints with the commission and the EEOC. The first letter was a "[l]etter of [c]ounseling" that concerned the plaintiff's ability to control students in the classroom as well as his recurring tardiness to school. Axon attested, as well, that the plaintiff had received numerous other "[l]etter[s] of [r]eprimand" that were based on, inter alia, his lack of classroom supervision and absence from his classroom, failure to submit lesson plans, and failure to report a fire in the machine shop. As a result of his behavior, the plaintiff received a one day suspension in March, 2007. The plaintiff also received a three day suspension in October, 2007, on the basis of his lack of proper classroom supervision, inappropriate workplace conduct, poor judgment and failure to follow direction from the administration.

The plaintiff alleged in his complaint that these disciplinary measures were in retaliation for the complaints he had filed with the commission and the EEOC. In his affidavit, however, Axon attested: "I had no knowledge that he had previously filed a complaint with the [commission] in 2005 about the consolidation of the blueprint reading program into the regular curriculum." Although

the plaintiff insisted in his deposition that Axon's statement was not credible, he was unable to point to any evidence that Axon or any other officials at Kaynor were aware of the complaints he had filed. Also, although the plaintiff asserted that he had suffered retaliatory employment actions "constituting treatment different from that imposed upon other teachers similarly situated to the plaintiff," he was similarly unable to provide the names of any such similarly situated teachers.

"In order to establish a prima facie case of retaliation, a plaintiff must show that: [1] he engaged in protected participation or opposition under [the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq.] . . . [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." (Emphasis omitted; internal quotation marks omitted.) *DeMoss* v. *Board of Education*, Docket No. 3:05-CV-00736 (DJS), 2014 WL 1875105, *13 (D. Conn. May 9, 2014).

On the basis of the evidence before the court, we conclude that there is no genuine issue of material fact as to whether the school system retaliated against the plaintiff for having filed administrative claims asserting discrimination by the school system. Indeed, as noted, the plaintiff offered no counterevidence to show that the officials at Kaynor knew of his complaints with the commission and the EEOC at the time they disciplined him for his perceived shortcomings. In sum, the plaintiff's claims amounted to bare conclusory assertions that the school system discriminated and retaliated against him; such statements are insufficient to survive a motion for summary judgment. See *Chadha* v. *Charlotte Hungerford Hospital*, 97 Conn. App. 527, 540, 906 A.2d 14 (2006) (no genuine issue of material fact where plaintiff relied on "conclusory statements and personal assessment of the motives of the defendants" in opposing summary judgment). The trial court properly rendered summary judgment in favor of the school system.

The form of the judgment is improper; the judgment is reversed only as to the ADEA claim and the case is remanded with direction to dismiss that claim for lack of subject matter jurisdiction. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] General Statutes § 46a-60 is a provision of the Connecticut Fair Employment Practices Act. See General Statutes § 46a-51 et seq.

[2] See 29 U.S.C. § 621 et seq.

[3] At trial, the school system raised the issue of res judicata concerning the retaliation claim. There, the school system claimed that because Judge Stefan F. Underhill of the United States District Court for the District of Connecticut had determined in the federal litigation between the parties that the plaintiff had failed to raise a genuine issue of material fact in support of the retaliation claim, he should have been foreclosed from again raising the claim in state court. From our review of the record, it does not appear

that the trial court responded to the res judicata claim but, rather, rendered summary judgment on the same basis as had Judge Underhill. On appeal, the school system has not raised res judicata as an alternate ground for affirmance. See Practice Book § 63-4 (a) (1). Therefore, we confine our analysis to whether the court correctly rendered summary judgment on the basis of its determination that the plaintiff had failed to establish the existence of any genuine issues of material fact.

[4] See No Child Left Behind Act of 2001, Pub. L. No. 107–110, 115 Stat. 1425, codified as amended at 20 U.S.C. § 6301 et seq. (2006 & Sup. III 2009).

[5] The record reflects that the plaintiff's original administrative complaint pleaded discrimination on the basis of the school system's decision to eliminate or to reduce blueprint reading courses across all schools. After the blueprint reading class at Eli Whitney was eliminated, the plaintiff amended his complaint with the commission and the EEOC on August 29, 2005, to specifically plead the elimination of the blueprint reading course he had taught there.

[6] As of February 10, 2009, the plaintiff was still employed as a manufacturing technology teacher at Kaynor although he was then on a medical leave of absence. The plaintiff testified at his deposition, dated October 30, 2008, that he was "pending retirement."

[7] Since the enactment of Public Acts, 1991, No. 91-331, codified at General Statutes § 46a-101, that statute has allowed a complainant to seek a release from the commission that permits the complainant to proceed directly in Superior Court.

[8] The plaintiff also claims that the court erred in considering the affidavits provided by the school system in support of its motion for summary judgment without any additional evidence to support the affiants' statements. The plaintiff's argument is without merit. See Practice Book § 17-45 ("[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like").

[9] The eleventh amendment to the United States constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[10] General Statutes § 46a-60 provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section: "(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability, including, but not limited to, blindness . . . ."

We note that § 46a-60 (a) (1) has been amended since 2005, when the plaintiff first filed his complaint of discrimination with the commission. See Public Acts, 2011, No. 11-55, § 24; Public Acts, 2011, No. 11-129, § 20. Because those amendments are not relevant to the claims raised by the plaintiff, we refer in this opinion to the current revision of § 46a-60 (a) (1).

[11] See No Child Left Behind Act of 2001, Pub. L. No. 107-110, 115 Stat. 1425, codified as amended at 20 U.S.C. § 6301 et seq. (2006 & Sup. III 2009).

[12] In support of his discrimination claim, the plaintiff in his complaint quoted a New Britain Herald article, published April 4, 2007, in which a school system representative stated that the school system's actions were to "tighten up because of federal cuts. We're letting some of our older teachers phase out. We're under pressure to make the bottom line balanced while bringing our system into the 21st Century." This statement is hearsay and is therefore inadmissible. See Conn. Code Evid. § 8-2; see also *Walker* v. *Housing Authority*, 148 Conn. App. 591, 600, 85 A.3d 1230 (2014) ("[h]earsay is generally inadmissible . . . and therefore when deciding a motion for summary judgment a court may not consider material that would be hearsay at trial" [citation omitted]). Accordingly, the court properly disregarded this reference in concluding that the school system was entitled to summary judgment.